WISCONSIN'S ENVIRONMENTAL
DECADE, INC., Plaintiff,

v.

WISCONSIN POWER AND LIGHT
COMPANY et al., Defendants.

No. 74–C–18.

United States District Court,
W. D. Wisconsin.

June 6, 1975.

Melvin L. Goldberg, Madison, Wis., for plaintiff.

Eugene O. Gehl, Madison, Wis., for power companies.

David C. Mebane, Madison, Wis., for R. Train.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil action for declaratory and injunctive relief brought pursuant to the Clean Air Act Amendments of 1970, 42 U.S.C. § 1857 et seq. Defendant Train has moved to dismiss the complaint insofar as it relates to him for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted. Both parties were provided with an opportunity to present factual matters in the manner permitted under Rule 56 with respect to motions for summary judgment. Since I intend to consider matters outside of the complaint in deciding defendant Train's motion to dismiss for failure to state a claim upon which relief can be granted, I must treat that motion as one for summary judgment.

For the purpose of defendant Train's motion to dismiss for lack of subject matter jurisdiction and for no other purpose I find as fact the matters set forth hereinafter under the heading "Facts." For the purpose of defendant Train's motion to dismiss for failure to state a claim upon which relief can be granted, now considered a motion for summary judgment, and for no other purpose, I find there is no genuine issue of material fact as to those same matters.

### Facts

Plaintiff is a Wisconsin corporation concerned with the protection and enhancement of the environment. Defendants Wisconsin Power and Light Company, Madison Gas and Electric Company and Wisconsin Public Service Corporation are Wisconsin corporations engaged in the generation, distribution and sale of electricity. Defendant Russell Train is the Administrator of the United States Environmental Protection Agency.

Defendants Wisconsin Power and Light Company, Madison Gas and Electric Company and Wisconsin Public Service Corporation collectively own a steam electric generating unit now under construction in the Town of Pacific in this district, which unit is commonly known as the Columbia Generating Station, Unit 1 (CGS). The CGS will be coal-fired, and capable of operation at greater than 250 million B.T.U. per hour heat input. Defendant Wisconsin Power and Light received permission from the State of Wisconsin Department of Natural Resources to construct the boiler of the CGS on or about September 10, 1972, and commenced actual construction during February, 1973. The combustion of coal in the boiler of the unit will result in the creation of sulfur dioxide which will be emitted into the air through smokestacks in amounts greater than 1.2 pounds per million B.T.U. input for a substantial portion if not all, of the time the unit is in operation. The Wisconsin Implementation Plan, approved by the defendant Administrator on May 31, 1972, pursuant to § 110 of the Act, 42 U.S.C. § 1857c–5, establishes an emission limitation of 1.2 pounds of sulfur oxides per million B.T.U. input for solid fossil fuel fired steam generators rated at over 250 million B.T.U. per hour which are new sources.[1] On September 20, 1973, plaintiff notified defendant Train that the CGS was in violation of the Wisconsin Implementation Plan, and requested that defendant Train notify defendant Wisconsin Power and Light and the State of Wisconsin of the violation pursuant to 42 U.S.C. § 1857c–8(a)(1). Plaintiff then received a reply from the United States Environmental Protection Agency. In that reply, it was stated that the position of the Agency remained the same as expressed in two earlier letters. In one of the letters referred to, that of August 27, 1973, from James O. MacDonald, Director, Enforcement Division, the following statements appear:

"At this time we do not feel that enforcement action under the Clean Air Act is appropriate. This decision has been reached for the following reasons:

. . . . . .

2. Regarding enforcement of the Wisconsin State Implementation Plan under Section 113 of the Clean Air Act the state has affirmatively determined that Wisconsin Power and Light has fully complied with all applicable State air regulations.

3. The State has determined that Columbia Generating Station is an *existing* source under Wisconsin's Administrative Code (letter attached). Unless there is judicial

---

1. The Wisconsin Administrative Code includes the following definition:
   "New Source: Any affected facility the construction or modification of which is commenced after the effective date of these rules." NR 154.01(19).
   The effective date of the regulations was April 1, 1972.

opinion to the contrary, EPA, as a Federal agency, must take the position that a decision on this matter can only be made by the appropriate Wisconsin agency pursuant to Wisconsin law."

As relief, plaintiff seeks, *inter alia*, an order requiring the Administrator to notify defendant Wisconsin Power and Light and the State of Wisconsin of the alleged violation of the Wisconsin Implementation Plan and a declaratory judgment stating that the CGS boiler will not meet the sulfur oxide emission limitations of the Wisconsin Implementation Plan and that the failure of the Administrator to so notify defendant Wisconsin Power and Light and the State of Wisconsin violated 42 U.S.C. § 1857c–8(a)(1).

### Opinion

Plaintiff alleges jurisdiction under the citizen enforcement provision of the Act, 42 U.S.C. § 1857h–2(a), which provides in part:

"Except as provided in subsection (b) of this section any person may commence a civil action on his behalf

.  .  .  .  .  .

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an or-

der, or to order the Administrator to perform such act or duty, as the case may be." [2]

Plaintiff contends that the Administrator had a non-discretionary duty under § 113 of the Act, 42 U.S.C. § 1857c–8(a)(1), to notify defendant Wisconsin Power and Light and the State of Wisconsin of the violation of the Wisconsin Implementation Plan. That section provides:

"Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of any requirement of an applicable implementation plan, the Administrator shall notify the person in violation of the plan and the State in which the plan applies of such finding. If such violation extends beyond the 30th day after the date of the Administrator's notification, the Administrator may issue an order requiring such person to comply with the requirements of such plan or he may bring a civil action in accordance with subsection (b) of this section."

Defendant Train seeks dismissal on two grounds: (1) that the duty of the Administrator to give notice of a violation of a state plan is a discretionary one and therefore may not be enforced by a suit brought pursuant to § 1857h–2 and (2) that even if there does exist a non-discretionary duty on the part of the Administrator to issue a notice of violation once a violation has been found, that duty could not have arisen in the instant case since plaintiff does not allege that a violation had been found.

Defendant Train construes the complaint to allege a violation of the duty to

---

**2.** This provision is just one aspect of a complex enforcement scheme, which also includes several mechanisms by which certain actions of the Administrator (as distinguished from failures to act) may be challenged. For example, the promulgation of most national standards may be reviewed only in the United States Court of Appeals for the District of Columbia; review of the promulgation or approval of a state's implementation plan may be had in the United States Court of Appeals for the appropriate circuit. 42 U.S.C. § 1857h–5. In addition, certain determinations of the Administrator are reviewable only in an enforcement proceeding against a person who has allegedly violated the Act. *Cf.* Indiana & Michigan Elec. Co. v. Envir. Protection Agency, 509 F.2d 839 (7th Cir. 1975), and Buckeye Power Inc. v. Envir. Protection Agency, 481 F.2d 162 (6th Cir. 1973) with Getty Oil Co. v. Ruckelshaus, 467 F.2d 349 (3rd Cir. 1972).

give notice set forth in § 1857c–8 and of no other duty. It is apparent, however, that plaintiff's complaint, when considered with its accompanying exhibits, should be read more broadly to allege also that the Administrator either refused to make a finding when presented with evidence of a violation, or made an incorrect finding that no violation existed. Implicit in plaintiff's argument are the contentions that the Administrator is required to make a finding when presented with evidence that a violation exists, and that the court in an action brought pursuant to § 1857h–2 may order the Administrator to make a finding, review a finding by the Administrator that no violation exists, and in either case order the Administrator to issue the appropriate notice if it is apparent that the only reasonable finding would be that a violation does in fact exist.

In the following portion of this opinion, I will consider (1) whether subject matter jurisdiction exists with respect to plaintiff's claim that the Administrator failed to issue the notice required by § 1857c–8; (2) whether subject matter jurisdiction exists with respect to plaintiff's claim that the Administrator failed to make a finding when presented with evidence of a violation of the Wisconsin Implementation Plan; (3) whether subject matter jurisdiction exists with respect to plaintiff's claim that the Administrator made an incorrect finding that no violation existed; and (4) whether summary judgment should be granted for defendant Train.

I

The Clean Air Act Amendments of 1970, 42 U.S.C. § 1857 et seq., require the Administrator of the United States Environmental Protection Agency to designate air pollutants which in his or her judgment have an adverse effect on public health and welfare. 42 U.S.C. § 1857c–3. He or she then must publish, and later promulgate by regulation, proposed national primary and secondary ambient air quality standards for each such pollutant.[3] 42 U.S.C. § 1857c–4. After the Administrator has promulgated a primary or secondary national ambient air quality standard, each state is required to adopt an implementation plan which provides for the implementation, maintenance and enforcement of that standard in each air quality control region in the state.[4] 42 U.S.C. § 1857c–5. The states are given the primary enforcement responsibility for these plans. However, to prevent a reluctant state agency from undercutting the Act's effectiveness by failing to enforce its plan vigorously, the Act also provides for enforcement by the Administrator. 42 U.S.C. § 1857c–8(a)(1). In addition, the Act permits the Administrator to become the principal enforcer of a plan where the state in which the plan applies fails to enforce it effectively. 42 U.S.C. § 1857c–8(a)(2).

The enforcement of a state plan by the Administrator under § 1857c–8(a)(1) occurs in several stages: the Administrator finds a violation; issues a notice of violation to the alleged violator and to the state; and finally issues an order requiring compliance or institutes a civil action. Defendant Train views each of these stages as part of a single enforcement process, and therefore considers each to belong under the rubric of prosecutorial discretion. The language of the Act, however, suggests that while the acts of issuing an order requiring compliance and initiating a civil action may be discretionary, the

---

3. Primary standards are those which the Administrator considers necessary to protect the public health; secondary standards are those which the Administrator believes necessary to protect the public welfare from known or anticipated adverse effects associated with that pollutant. 42 U.S.C. § 1857c–4(b).

4. Plans must provide for primary standards to be attained in no more than three years and secondary standards to be attained in a reasonable time. 42 U.S.C. § 1857c–5(a)(2)(A).

Administrator has an obligatory duty to notify the person in violation of the implementation plan and the state in which the plan applies whenever a violation has been found: "the Administrator *shall* notify . . . the Administrator *may* issue an order . . . or he *may* bring a civil action." 42 U.S.C. § 1857c–8(a)(1) (emphasis added).

■ Defendant Train cited case law suggesting that the presence of the word "shall" in a statute does not always mean that the performance of the particular act or duty described is not discretionary. While I do not dispute that proposition, I consider that the word "shall" is most commonly an indication that the performance of the act or duty described is intended to be mandatory, especially where, as here, there follows a sentence describing another act and using the permissive "may." Unless there is evidence of Congressional intent to the contrary, I must consider the act of issuing notices of violation to be one the performance of which is not discretionary with the Administrator. Defendant Train has provided no such evidence, relying instead on case law regarding prosecutorial discretion. I do not believe this case law to be controlling in the instant case, in which the relief sought is not a prosecution or enforcement action, with all their attendant commitment of governmental resources, but rather the issuance of a notice of violation.

Neither does the legislative history of the Clean Air Act Amendments of 1970 support an interpretation other than

that which is suggested by a literal reading of the statute. The version of § 1857h–2 which ultimately became law was based on § 304 of Senate Bill 4358. That provision circumscribed the prosecutorial discretion ordinarily allowed an agency administrator in the enforcement process, permitting a suit against the Secretary of the Department of Health, Education and Welfare.[5]

"where there is alleged a failure . . . to exercise (i) his authority to enforce standards or orders established under this Act; or (ii) any duty established by this Act." S. 4358, 91st Cong., 2d Session (1970). Sen. Rep. 91–1196 at 122–23.

The committee report on the Senate bill reveals that the citizen enforcement provision was inserted in response to a widespread sentiment that earlier efforts to control air pollution had been unsuccessful because of less-than-diligent enforcement by government agencies.[6] Suits were authorized against the Secretary as well as against alleged violators of the Act and of state plans so that citizen enforcers would not have the burden of going forward with the entire action. Sen.Rep. 91–1196 at pp. 38–39.[7]

Section 116 of the Senate Bill set forth the Secretary's responsibility in the enforcement process. It required the Secretary to issue an abatement order, and to institute a civil action if that order was not complied with, whenever he found that a plan had been violated and that, in his judgment, the state had

---

5. The administrator of the Environmental Protection Agency was substituted for the Secretary in the final version of the bill.

6. The report stated:
"Government initiative in seeking enforcement under the Clean Air Act has been restrained. Authorizing citizens to bring suits for violations of standards should motivate governmental agencies charged with the responsibility to bring enforcement and abatement proceedings." Sen. Rep. 91–1196, pp. 36–37.

7. That report commented at pages 38–39:
The Committee bill would provide in the citizen suit provision that actions will lie against the Secretary for failure to exercise his duties under the Act, including his enforcement duties. The Committee expects that many citizen suits would be of this nature, since such suits would reduce the ultimate burden on the citizen of going forward with the entire action.

not satisfactorily administered its plan.[8] Sen. 4358 § 116(a)(2), (4), Sen.Rep. 91–1196, 91st Cong., 2d Session (1970) at p. 97. Thus, it was clear under the Senate Bill that citizens could sue to require the Secretary to initiate enforcement actions as well as to require him or her to perform other duties. Still, a suit could not be brought against the Secretary for failure to exercise his or her authority to enforce a state plan unless an abatement order had first been issued; and no such order would have been issued unless the Secretary had first found that the state was not satisfactorily enforcing its plan.

Some legislators and then Secretary of Health, Education and Welfare Richardson, in commenting on the Senate Bill, expressed a fear that suits brought against the Secretary to require him or her to pursue a particular enforcement action might have the effect of distorting the agency's enforcement priorities. *See* Steinberg, "Is the Citizen Suit Provision a Substitute for Class Actions in Environmental Litigation? An Examination of the Clean Air Act of 1970 Citizen Suit Provision", 12 San Diego L. Rev. 107, 135 (1974). In response to this criticism, the Conference Committee altered the citizen enforcement provision to limit suits against the Administrator to those alleging a failure to perform duties which were mandatory under the Act. H.R.Rep. No. 91–1783, 91st Cong., 2d Session (1970) at p. 56, U.S.Code Cong. & Admin.News, 1970, p. 5374. However, at the same time the provision for federal enforcement of state implementation plans was liberalized so that the Administrator could enforce a plan without first finding that the state was not adequately administering its plan.

This history indicates that the Conference did consider the undesirable effects that a provision permitting citizens to sue the Administrator might have on the Agency's efforts to efficiently allocate its resources, but still found a need to provide a mechanism to challenge sluggish enforcement by the Agency. The compromise struck in Conference permits only those suits which seek to compel the Administrator to perform duties which are not discretionary. In the case of the enforcement of implementation plans, the result of this compromise is to permit suits seeking to require the Administrator to issue a notice of violation but not those seeking to require him or her to insititute a civil action.

Defendant has cited Kentucky v. Ruckelshaus, 362 F.Supp. 360 (W.D.Ky. 1973), aff'd 497 F.2d 1172 (6th Cir. 1974), for the proposition that the Administrator's decision not to commence an enforcement action is not reviewable by the district court. However, in the instant case it is not a decision not to commence an action but a decision not to issue a notice of violation which is challenged. I am of the opinion that Congress intended to distinguish between these two stages of the enforcement process. In *Kentucky, supra,* the Sixth Circuit also recognized this distinction, stating:

"A reading of section 113(a)(1) reveals that the Administrator *shall* give notice to persons in violation of the plan, but that he *may* thereafter issue an order or bring an action under subsection (b). . . . Section 113(b) uses only the discretionary 'may'; the mandatory 'shall' does not appear. . . . " 497 F.2d at 1177.

---

8. The Senate Report described that section as follows:

    If the Secretary should find that a State or local pollution control agency is not acting to abate violations of implementation plans or to enforce certification requirements, he would be expected to use the full force of Federal law. Also, the

Secretary should apply the penalty provisions of this section to the maximum extent necessary to underwrite the strong public demand for abatement of air pollution and to enforce compliance with the provisions of the Act.

Sen.Rep. 91–1196 at p. 97.

Accordingly, I conclude that subject matter jurisdiction is present over plaintiff's claim that the Administrator failed to give notice as required by § 1857c–8.

## II

▮ Neither the words nor the legislative history of § 1857c–8 make it clear whether the Administrator is obliged to make a finding when information regarding a violation is presented to him. Plaintiff notes that in describing federal enforcement of state plans the Conference Report focuses on whether a violation exists, rather than whether a finding has been made:

"In case of a violation of any requirement of a State implementation plan, the Administrator is to notify the State in which the violation occurs as well as the violator. If the violation extends beyond the thirtieth day after notification, the Administrator may issue an order requiring compliance by such person or may bring court action against such person. . . ." H.R.Rep. No. 91–1783, 91st Cong., 2d Session (1970) at pp. 47–48, U.S.Code Cong. & Admin.News, 1970, p. 5380.

This language, while perhaps suggesting that Congress assumed that the Administrator would make a finding, is certainly not dispositive. Nonetheless, having determined that the Administrator's duty to issue a notice of violation is not discretionary, I must also conclude that when presented with evidence indicating that a violation may exist, the Administrator must make a finding that a violation does or does not exist. Because I consider that Congress made a deliberate decision that the duty to issue notices of violation should be non-discretionary, I cannot accept an interpretation of the language of § 1857h–2 which would make this duty an empty one by permitting the Administrator to make a finding or not make a finding as he or she sees fit. *Contra,* New Mexico Citizens v. Train, 6 ERC 2061 (D.N.M. 1974). *See also* United States Steel Corp. v. Fri, 364 F.Supp. 1013, 1019 (D.Ind.1973). I conclude that subject matter jurisdiction is present over plaintiff's claim that the Administrator refused to make a finding when presented with evidence of a violation of the Wisconsin Implementation Plan.

## III

Whether this court may review a finding of the Administrator that an implementation plan has not been violated is a more difficult question. The language of § 1857h–2 permits suits against the Administrator only where there is alleged a failure to perform a duty or act not discretionary with the Administrator; the suits which are permitted are essentially those which seek relief in the nature of mandamus. *Cf.* 28 U.S.C. § 1361; 5 U.S.C. § 706(1).

Following the enactment of 28 U.S.C. § 1361 in 1962, there was much discussion concerning the extent to which the scope of review under that statute, and under other statutes providing for relief where government bodies have failed to act, should conform to the mandamus tradition by providing relief only where a violation of a ministerial, as opposed to a discretionary, duty is proven. *See* Davis, Administrative Law, § 23.11 (1970 Supp.). It has been argued that the ministerial-discretionary distinction fails to address the central question: accepting that an administrator has a certain amount of discretion in a particular area, what are the limits within which that discretion must operate? Byse & Fiocca, "Section 1361 of the Mandamus and Venue Act of 1962 and Nonstatutory Judicial Review of Federal Administrative Action", 81 Harv.L.Rev. 308 (1967). The principal alternative which has been suggested is to depart from the mandamus tradition and adopt in its place the scope of review set forth in the Administrative Procedure Act, so that in an action seeking affirmative relief, the court might set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of dis-

cretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A);[9] Davis, *supra*.

■■ Nonetheless, from the legislative history discussed earlier in this opinion, it appears that § 1857h–2 was intended to limit suits against the Administrator to those alleging a failure to perform a mandatory function. Accordingly, I consider that, however the scope of review may be developing or broadening in actions commenced pursuant to other statutes permitting relief by way of mandatory injunction against federal administrative agencies, this particular provision was intended to provide relief only in a narrowly-defined class of situations in which the Administrator failed to perform a mandatory function; it was not designed to permit review of the performance of those functions, nor to permit the court to direct the manner in which any discretion given the Administrator in the performance of those functions should be exercised. I conclude that insofar as the complaint seeks review of a negative finding of the Administrator, jurisdiction is not present under § 1857h–2, although it may be present under other statutes.[10]

9. Some courts appear to have adopted this approach, although few have articulated it. The Court of Appeals for the District of Columbia Circuit, for example, in treating actions seeking affirmative relief frequently applies the same considerations as would be applicable had the action been brought pursuant to a statutory review provision. See Byse & Fiocca, "Section 1361 of the Mandamus and Venue Act of 1962 and 'Nonstatutory' Judicial Review of Federal Administrative Action", 81 Harv.L.Rev. 308 (1967).

10. The intent of § 1857h–2 was to permit judicial intervention in the Agency's processes at a point where it otherwise would not be permissible under existing law, and by persons who otherwise might not be able to sue, and not to restrict any rights which a person or persons might have under other statutes. Section 1857h–2(e) states:

"Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek the enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency)."

Thus, there might be alternate causes of action and jurisdictional bases on which review of a negative finding, or, in some circumstances, a failure to make a finding which is the equivalent of a negative finding, could rest. For example, review might be sought under the Administrative Procedure Act, (APA), 5 U.S.C. § 701 et seq. That act permits this court to review the final action of "each authority of the Government of the United States" except where there is a statutory prohibition on review or where "agency action is committed to agency discretion by law."

In the instant case, there is no statutory prohibition on review of the Administrator's finding that a violation does not exist. Nor can it be said that there is clear and convincing evidence of the legislature's intent to restrict review; section 1857h–2(e) suggests, precisely the opposite. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). While the Act does contemplate that the Administrator will have a wide range of discretion in making his finding that a violation does or does not exist, that finding is not one "committed to agency discretion" within the meaning of the Administrative Procedure Act. This is a narrow exception, applicable only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 at 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). In the case at bar, the finding to be made is one of whether a violation of the applicable implementation plan exists, on the basis of the information available to the Administrator. This is a finding of a kind typically reviewed by the courts and which does not involve matters not susceptible of judicial scrutiny. Certainly there is law to be applied; in fact, the agency in this case apparently refrained from making an independent determination of whether the Wisconsin plan had been violated because of a construction of the Clear Air Act which required the agency to adopt as its own the construction of a state's implementation plan which was advanced by the state. It appears, then, that the Administrator's finding that the state plan had not been violated would be reviewable under the APA. However, that Act has not been determined to be an independent source of jurisdiction, and plaintiff has not alleged jurisdiction under any statute other than 42 U.S.C. § 1857h–2.

## IV

I turn now to defendant Train's motion to dismiss for failure to state a claim upon which relief can be granted, now considered a motion for summary judgment.

The letter in which the Environmental Protection Agency stated that enforcement action was not appropriate, read most favorably to the plaintiff, indicates that the Administrator did not make an independent determination of whether a violation of the state's plan existed, but rather considered himself bound by the state's interpretation of its plan. If the state's interpretation of its plan is indeed binding on the Administrator under the circumstances present in the instant case, the Administrator's duty to determine whether a violation exists either would not have arisen or would have been discharged by the statements made in the letter to plaintiff. On the other hand, if the Administrator is not bound by the state's interpretation of its plan in the circumstances present in the instant case, the letter to plaintiff would not have discharged his obligation to make a finding, and a genuine issue would remain in this lawsuit regarding the material fact of whether this duty had been discharged in some other way.

It has been suggested that since the Act preserves the right of the states to adopt any standards so long as they are adequate to meet the national standards in a timely fashion, 42 U.S.C. § 1857c–5, a state's interpretation of its plan should be binding on the Administrator except where it will prevent the attainment of standards within the time established by the Act; but that if the state's interpretation will prevent such attainment the Administrator should be able to enforce any reasonable interpretation of the plan necessary to attain the national standards. Luneberg, "Federal-State Interaction Under the Clean Air Act Amendments of 1970", 14 B.C.Ind. & Com.L.Rev. 637 (1973). Although it is true that the Administrator is obligated to approve revisions of state plans if the plans as revised still meet the standards set forth in the Act, Train v. National Resources Defense Council, Inc., 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975), reasonable notice and public hearings are required before implementation plans may be revised. 42 U.S.C. § 1857c–5(a)(3). Similarly, postponements and variances are permissible only if certain requirements are met. Thus, while the Administrator eventually might have to approve a revision which incorporated the state's construction of a provision whose meaning was disputed, the public would be provided with an opportunity to protest such a departure from the original plan. Furthermore, review of the Administrator's approval of a revision would probably be available in the appropriate Court of Appeals pursuant to § 1857h–5, whereas his or her acquiescence in a state's construction of its plan would not be.[11]

It is also notable that House Bill 17255 expressly did not permit the Administrator to enforce a plan unless it appeared that, as a result of the state's failure to enforce its plan, an ambient air quality standard established by the Administrator would not be met. In its final form, the Act did not adopt this limitation, again suggesting that, although the states might be permitted significant leeway in the adoption of their plans, once adopted the scheme of the Act would require the state either to follow the plans closely or to revise them following public hearings, even if less stringent requirements would permit na-

11. Section 1857h–5(b)(1) provides in part: A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 1857c–5 of this title or section 1857c–6(d) of this title . . . may be filed only in the United States Court of Appeals for the appropriate circuit. Any such petition shall be filed within 30 days from the date of such promulgation, approval, or action, or after such date if such petition is based solely on grounds arising after such 30th day.

tional standards to be met. House Bill 17255, § 108(c)(4) H.R.Rep. No. 91–1196, pp. 26–28.

▮ Nonetheless, because the states have the primary enforcement responsibility for their plans, I am of the opinion that they should be permitted some leeway in the interpretation of those plans. I do not think it unreasonable to require plaintiffs to appeal pursuant to § 1857h–5 the Administrator's approval of a state plan if any construction which could reasonably be anticipated would result in a failure to meet the national ambient air quality standards. I conclude, therefore, that although the Administrator is obligated to make an independent determination of whether or not a state's plan has been violated in a particular instance, he or she should defer to the interpretation of the plan advanced by the state insofar as he or she concludes that the state's interpretation of its plan is a reasonable one which does not make the plan inconsistent with the Act. In order to discharge his obligation under § 1857c–8 the Administrator must find one of the following: (1) a violation of the plan exists; (2) no violation of the plan as the Administrator would construe it exists; or (3) that the state has construed its plan to exclude the complained-of situation, such construction is a reasonable one, and national standards will still be met by the plan as construed by the state. Since the facts which I have found to be undisputed for the purpose of this motion do not show that defendant Train made one of these findings, I conclude that a genuine issue remains in this lawsuit regarding the material fact of whether defendant Train failed to perform the duty to make a finding pursuant to § 1857c–8 when presented with evidence of a violation of the Wisconsin Implementation Plan.

▮ However, because I have concluded that I may not, pursuant to § 1857h–2, direct the manner in which any discretion given the Administrator in the performance of his duties should be exercised, I consider that I am not permitted to order the Administrator to issue a notice of violation unless he or she has first found a violation of a state plan to exist.[12] Since plaintiff does not allege that defendant Train made that finding, his duty to issue a notice could not have arisen. I conclude that no genuine issue of material fact remains as to whether defendant Train violated his duty to issue a notice pursuant to § 1857c–8, and that defendant Train is entitled to judgment as a matter of law on that claim.

*Order*

It is hereby ordered that

(1) The motion of defendant Train to dismiss this action for lack of jurisdiction over the subject matter is

(a) denied with respect to plaintiff's claim that defendant Train violated his duty to give notice pursuant to 42 U.S.C. § 1857c–8;

(b) denied with respect to plaintiff's claim that defendant Train violated his duty to make a finding pursuant to 42 U.S.C. § 1857c–8; and

12. It may be that in some circumstances the failure of the Administrator to make a finding would be the equivalent of a negative finding, and therefore reviewable pursuant to some statute other than the Clean Air Act. *See* note 10, *supra.* For example, in Envir. Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970), 439 F.2d 584 (1971), a case under the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 135 et seq., the court suggested that review of a failure to make a finding might sometimes be had under a statutory review provision. It rejected an argument that the action was in effect a petition for relief in the nature of mandamus:

"We find it unnecessary to decide whether petitioners could have obtained relief from the district court, since the availability of that extraordinary remedy for the failure of an officer to perform his statutory duty need not bar statutory appellate review of his failure to act, when exigent circumstances render it equivalent to a final denial of petitioner's request." 428 F.2d at 1098.

(c) granted with respect to plaintiff's claim that defendant Train made an incorrect finding that no violation of the Wisconsin Implementation Plan existed.

(2) The motion of defendant Train to dismiss this action for failure to state a claim upon which relief can be granted is

(a) denied with respect to plaintiff's claim that the Administrator failed to make a finding pursuant to 42 U.S.C. § 1857c–8; and

(b) granted with respect to plaintiff's claim that the Administrator violated his duty to give notice pursuant to 42 U.S.C. § 1857c–8.