**VINE STREET CONCERNED CITIZENS, INC.**

v.

**Elizabeth H. DOLE, Secretary of Transportation of the United States and Thomas D. Larson, Secretary of Transportation of the Commonwealth of Pennsylvania.**

**Civ. A. No. 84–6310.**

United States District Court, E.D. Pennsylvania.

Feb. 28, 1985.

---

**510**

Harold R. Berk, Philadelphia, Pa., for plaintiff.

John M. Hrubovcak, Asst. Counsel, Dept. of Transp., Com. of Pa., Harrisburg, Pa., Rachel Shao, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Plaintiff in this matter sought injunctive relief under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, to prevent proposed pre-construction and construction activities on the Vine Street Transportation Improvements Project (the "Vine Street Expressway" or "Expressway") until defendants have prepared an adequate Supplemental Environmental Impact Statement considering the impact of simultaneous construction of the Vine Street Expressway and the proposed Philadelphia Convention Center.

Plaintiff Vine Street Concerned Citizens, Inc. ("Concerned Citizens") is a Pennsylvania non-profit corporation; its members include businesses and residents in the vicinity of the proposed Expressway construction. Defendants are Elizabeth H. Dole, Secretary of Transportation of the United States and Thomas D. Larson, Secretary of Transportation of the Commonwealth of Pennsylvania. This Expressway project is to improve that portion of the Vine Street Expressway (I–676) in Philadelphia between 17th and 18th Streets on the west and the Benjamin Franklin Bridge on the east. The project also includes ramps interconnecting with local streets and with the Delaware Expressway (I–95). The total length of limited access highway involved is approximately 1.3 miles.

Following a hearing on February 7, 1985, this court denied injunctive relief for reasons stated from the bench but retained jurisdiction to consider the merits of this litigation on an expedited basis. This memorandum is an elaboration of the court's bench opinion.

In 1980, a joint federal, state and city task force was formed to develop alternatives for Vine Street.[1] The task force determined that the originally proposed full-scale Expressway could not be achieved without unacceptable displacement of significant community resources and that there should be further consideration of alternatives. Preparation of the Draft Environmental Impact Statement ("DEIS") considering numerous alternatives was completed in December, 1982. Following public hearings, evaluation of all comments received, and further review and analysis, a

---

1. Planning for the Vine Street Expressway began during the 1960's and 1970's.

two-volume Final Environmental Impact Statement ("FEIS") was prepared and approved by the Federal Highway Administration ("FHWA") in September, 1983. The FEIS selected a scaled-down Expressway alternative[2] as the basis for design and construction of the project. The FHWA record of decision accepting the final design of the scaled-down alternative was issued on March 6, 1984.

The Expressway construction is planned for completion under four construction contracts. According to the Affidavit of Vito Genua, Project Manager for the Pennsylvania Department of Transportation, the contracts contemplated for 1985 provide for pre-construction activities; building four noise walls near Chinatown, installing air conditioning and double glazing on the windows at Holy Redeemer Church and School and Roman Catholic High School, removing the Reading Railroad viaduct, building a pumping station at 10th and Vine Streets and modifying one at 22nd Street, building a retaining wall for the 13th Street bridge, building a temporary service road, and relocating some utilities. These pre-construction activities require termination of certain leases for parking lots adjacent to the proposed construction and demolition of some buildings. Work on the pre-construction phase is scheduled to commence in March, 1985, but delays in obtaining necessary federal funds may force at least some postponement.[3]

During the preparation of the Expressway Draft and Final Environmental Impact Statements, the City of Philadelphia was contemplating the use of several sites for a Convention Center. On September 15, 1983, one week prior to FHWA's issuing the FEIS, the City's Convention Center Steering Committee recommended that the Reading Terminal be selected as the site for a new Convention Center. The FEIS's discussion of the proposed Convention Center is limited to the following paragraph:

> Convention Center—Two sites are currently being considered by the City of Philadelphia for future consideration of a Convention Center in Center City. These sites, Franklintown (A) and Reading Terminal (B) are within the Vine Street study area. Selection of a site is expected in August, 1983, with construction completed in 1987.

FEIS, Volume 1, p. 75.

The Philadelphia City Council approved the Reading Terminal site on October 4, 1984, and the City is currently preparing a DEIS for the Convention Center. According to the Government's testimony at this court hearing, this DEIS should be ready for circulation and public comment by the end of February or beginning of March, 1985.

The crux of the controversy before us is whether the simultaneous construction of the Expressway and Convention Center so essentially and extensively impacts the affected environment that a supplement to

---

**2.** The scaled-down Expressway alternative is described in the FEIS as follows:

> The four-lane Scaled-Down Expressway ... separates through traffic from local directional service road traffic by extending the existing depressed lanes on Vine Street eastward from 17th Street to 9th Street, then becomes elevated to make direct connections to I-95 and the Benjamin Franklin Bridge. An interchange at 15th and 16th Streets will provide traffic movements between the local street system and the depressed expressway lanes. Ninth Street, Ridge Avenue, and Wood Street will be closed to through traffic. 5th Street will remain open at its intersection with the bridge approach.
>
> East of the 15th/16th Street interchange, eastbound expressway traffic exits at 8th Street. Entrance to the expressway westbound will

also be provided at 8th Street. Local and CBD access to I-95 will be provided at Broad and 7th Streets. The intersection at 6th Street will be grade separated, for the westbound movement between the expressway and the Benjamin Franklin Bridge. The Benjamin Franklin Bridge Monument will be retained. The anticipated duration of construction is a 36-month period beginning in late 1985, with a total project cost of approximately 176 million dollars.

FEIS, Volume 1, p. 26.

**3.** According to Edward S.G. Dennis, Jr., United States Attorney for the Eastern District of Pennsylvania, funding considerations would not affect at least lease termination and building demolition.

the Expressway FEIS is required.[4] The pertinent federal regulation states:

> The DEIS or FEIS may be supplemented at any time. Supplements will be necessary when there have been significant changes in the proposed action, the affected environment, the anticipated impacts, or the proposed mitigation measures.

23 C.F.R. § 771.129 (1984). The Concerned Citizens contend that until a supplemental EIS is prepared, all pre-construction and construction activities must cease or members of the Concerned Citizens will suffer irreparable harm. But defendants argue that whether there has been significant change is not properly before the court at this time. Because the Convention Center DEIS is not yet complete, the FHWA has not been able to determine whether the Convention Center plans constitute a significant environmental change meriting a supplemental EIS. Defendants also contend that until FHWA makes this decision, there is no final agency action ripe for review and this case is therefore premature. Furthermore, defendants assert that plaintiffs have failed to establish any irreparable environmental harm that will result from the pre-construction activities about to begin.

■ It is well established that the party moving for a preliminary injunction has the burden of proof and must show (1) a reasonable probability of eventual success on the merits, and (2) that irreparable injury *pendente lite* will occur if relief is not granted. Additionally, the court should consider, wherever relevant, (3) the possibility of harm to others from the grant or denial of injunctive relief, and (4) the public interest. *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137 (3d Cir. 1982); *Oburn v. Shapp*, 521 F.2d 142 (3d Cir.1975). In balancing these competing concerns, the court must consider the extraordinary nature of injunctive relief:

> [a]n injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable .... The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982) (citations omitted).

It was conceded by Louis Papet, Division Administrator of the FHWA, that the decision to build a Convention Center at Reading Terminal is of sufficient import to require reevaluation of the Expressway FEIS to determine if a supplemental EIS is necessary under 23 C.F.R. § 771.129. But the Government concedes only that consideration of whether a supplement is necessary must be made, not that a supplement will be necessary.[5] It would be inappropriate for the court to review the results of that reevaluation now when the record is not sufficiently ripe. Plaintiff cannot demonstrate a likelihood of success on the merits because the underlying agency decision which the Concerned Citizens seek to challenge has yet to be made.

A FHWA reevaluation decision is expected approximately one month after the FHWA receives the Convention Center DEIS. If it decides not to supplement the Expressway FEIS, plaintiff may then challenge this final administrative action. The

---

**4.** Plaintiff's motion also appears to challenge the adequacy of the FEIS's consideration of construction impact on archeological resources and the need for alternative planning for a decking above the Expressway to permit continued northern development of Chinatown. However, since plaintiffs presented no argument or evidence that the FEIS failed fully to consider the decking alternative or that the archeological reports and studies were deficient, this court must assume that plaintiff chose not to pursue these contentions.

**5.** Such a reevaluation was made to determine if a proposed parking garage, located immediately adjacent to the project between 15th and 16th Streets, would result in any significant changes in the impacts identified in the FEIS. The reevaluation concluded that the garage would cause no significant changes in impacts over those discussed in the FEIS, so no supplemental EIS was prepared.

duty of the court would then be to review the administrative record to determine if the agency complied with NEPA's procedural requirements and the agency's refusal to supplement was not substantively arbitrary or capricious. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *Township of Springfield v. Lewis*, 702 F.2d 426, 437 (3d Cir.1983) ("an agency's determination not to [revise] an EIS must be reasonable under the circumstances." (citations omitted)). If the FHWA determines to supplement the FEIS, then the court might consider the timetable for such an undertaking and the effect, if any, on the timing of phases planned for the Expressway project.[6] When any supplemental EIS has been completed, the court may review the administrative record to determine if NEPA's procedural requirements have been met and the decision was not substantively arbitrary or capricious.

 Plaintiff's burden of demonstrating harm is exacting:

> The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.

*Oburn v. Shapp*, 521 F.2d 142, 151 (3d Cir.1975) (emphasis in original). Plaintiff has failed to demonstrate that irreparable harm would result from the continuation of pre-construction activities until the FHWA decides whether to prepare a supplemental EIS.

The Concerned Citizens' alleged injuries are economic rather than environmental. No irreparable damage to the environment will occur during 1985's pre-construction activities and the substantive issues presented by this lawsuit will be decided on the merits prior to next year's planned beginning of the actual construction of the Vine Street Expressway.

The state's termination of leases for advertising signs and parking lots, if wrongful, may be remedied by money damages at law. *See Ezy Parks v. Larson*, 499 Pa. 615, 454 A.2d 928 (1982) (holding that Commonwealth Court abused its discretion in exercising its equitable power to enjoin the Pennsylvania Department of Transportation from terminating leases). Demolition of vacant buildings owned by the state is not even harmful; in any event, there has been no showing of irreparable harm to anyone.

There is also no irreparable harm with regard to the actual pre-construction work about to begin under the first contract. Construction of noise walls and installation of air conditioning and double glazing on windows of a church and two parochial schools will improve rather than damage the environment. If plaintiff's objection to the noise walls is their proposed height, the walls can always be lowered or removed. Removal of the Reading Railroad viaduct is certainly not harmful; the completed commuter tunnel has made its need obsolete.[7]

Construction and modification of pumping stations will lead to environmental improvement, since there will be improved surface water draining. There has been no evidence that building of a retaining wall and abutment for the 13th Street bridge will cause any harm to anyone. Construction of a temporary service road between Broad and 12th Streets will no doubt cause some inconvenience to some people, but the

---

**6.** The proposed Convention Center could undergo many changes between its draft and final EIS. Any Expressway supplemental EIS would consider the likely impact only of those alternative Convention Center plans being given serious consideration at the time of preparation of the Convention Center DEIS.

**7.** One of the Concerned Citizens is the owner of a gasoline station on Vine Street adjacent to the viaduct. He testified that his business depends on his visibility and accessibility to Vine Street traffic. Removal of this viaduct will increase the visibility of his station to traffic moving from east to west on the north side of Vine Street where he is located, and when the demolition is completed, it is more likely to be helpful to his business than harmful.

record is bare of any evidence of irreparable harm. There is also no evidence that relocation of utilities would cause serious detriment; it would certainly not cause irreparable harm. Of all the pre-construction activity only the noise walls and bridge work might not have been undertaken even if the Expressway project were seriously delayed or cancelled.

The entry of a preliminary injunction would subject third persons not involved in this litigation to possible harm. Just as the Concerned Citizens oppose the Expressway[8] many other citizens wish this construction to proceed promptly because of their belief it will be beneficial to the community. Were it not for a general desire to improve Vine Street, the Expressway project would never have survived the rigorous and multiple debate and review processes. Thus, it is in the public interest for pre-construction work to begin.

Of course, the public interest also favors prompt determination of whether the proposed Convention Center forces delay or modification of the Expressway. For this reason, the motion for a preliminary injunction is denied but the case will be expedited on the merits, *see Ashwood Manor Civic Association v. Dole*, Slip Op. (E.D.Pa. September 26, 1984), to ensure that the FHWA acts promptly to reevaluate the Expressway FEIS in light of the Convention Center DEIS. It will be so ordered.

---

8. Though the Concerned Citizens have framed the legal issues in this suit as a request for a supplemental EIS, the real concern of those who testified was to oppose the scaled-down Expressway alternative altogether.