## VINE STREET CONCERNED CITIZENS, INC., Plaintiff,

### v.

**Elizabeth H. DOLE, Secretary of Transportation of the United States and Thomas D. Larson, Secretary of Transportation of the Commonwealth of Pennsylvania, Defendants.**

### Civ. A. No. 84–6310.

United States District Court, E.D. Pennsylvania.

Aug. 28, 1985.

---

Harold R. Berk, Philadelphia, Pa., for plaintiff.

Rachel Shao, Asst. U.S. Atty., Philadelphia, Pa., for Dole.

John M. Hrubovcak, Asst. Counsel, Dept. of Transp., Com. of Pa., Harrisburg, Pa., for Larson.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

The parties to this action have filed cross-motions for summary judgment. Plaintiff Vine Street Concerned Citizens, Inc. ("Concerned Citizens") moved to enjoin construction of the Vine Street Transportation Improvements Project ("Vine Street Expressway" or "Expressway") until defendants Elizabeth H. Dole, Secretary of Transportation of the United States, and Thomas Larson, Secretary of Transportation of the Commonwealth of Pennsylvania, prepared a Supplemental Environmental Impact Statement ("SEIS") to the Vine Street Final Environmental Impact Statement ("VSFEIS" or "FEIS"). This SEIS would evaluate the impact of the proposed Philadelphia Convention Center Complex at Reading Terminal ("Convention Center") on the Expressway, including any adverse impact of increased traffic flow and air and noise pollution. Defendants' cross-motion argued that there was no genuine issue as to any material fact and that defendants were entitled to judgment in their favor as a matter of law. The court heard oral argument on July 1, 1985 and granted the parties leave to supplement the record until August 9, 1985. The court now grants summary judgment in favor of the federal and state defendants.

## PROCEDURAL HISTORY

The relevant background facts to this lawsuit are set forth in the court's February 28, 1985, 604 F.Supp. 509, Memorandum and Order denying plaintiff's motion

for a preliminary injunction against pre-construction activities on the Vine Street Expressway pending defendants' preparation of an adequate Vine Street SEIS to consider the impact of simultaneous construction of the Vine Street Expressway and proposed Convention Center. The court there found that pre-construction activities would not cause irreparable harm to plaintiff and that the Federal Highway Administration (FHWA) could not reevaluate the Expressway environment to determine whether the Convention Center plans constituted a significant environmental change meriting a SEIS until the planned Convention Center Draft Environmental Impact Statement ("CCDEIS" or "DEIS") had been completed. Relying on the Government's testimony at the preliminary injunction hearing that this DEIS would be ready for circulation and public comment by March, 1985, the court ordered this case expedited on the merits to ensure that the FHWA acted promptly to reevaluate the Expressway FEIS in light of the Convention Center DEIS.

On February 25, 1985, the City of Philadelphia issued the Convention Center DEIS. The FHWA reviewed the DEIS, evaluated the project's possible potential impact on the Vine Street Expressway, and determined on April 15, 1985 that a supplement to the Vine Street FEIS was not necessary. *See* Reevaluation, Vine Street Transportation Improvements Final Environmental Impact Statement, April 15, 1985 ("Reevaluation") (Administrative Record 269).

This court called a conference with counsel on May 16, 1985 to discuss the court's tentative impression that this Reevaluation considered the impact of Convention Center traffic on Vine Street Expressway through traffic but not the impact on ingress and egress in the area from 8th to 15th Streets. On May 17, 1985, defendants supplemented the record with a *Traffic Update to the Reevaluation of April, 1985* ("Traffic Up-

date") that corrected an error in the Reevaluation and illustrated presumed traffic flows between the Convention Center and Expressway service roads on the entrance and exit ramps of the present plan.

On May 31, 1985, plaintiff filed its motion for summary judgment and state and federal defendants subsequently filed responses and cross-motions. Concerned Citizens claimed that a SEIS was required as a matter of law; defendants claimed that because they had fully complied with both the letter and the spirit of the National Environmental Policy Act of 1969 (42 U.S.C. §§ 4321–47), they were entitled to summary judgment. At oral argument on July 1, 1985, plaintiff withdrew its contentions regarding air and noise pollution and simultaneous construction and stated on the record that the only issue remaining in contention was that of traffic flow and access to/from the Expressway from/to the Convention Center.[1] Because the court believed the Reevaluation and Traffic Update inadequately considered the issue of truck access to the Convention Center and because the Government did not make of record information regarding the speculative nature of the Convention Center, the court granted leave to the parties to supplement the record further. Defendants supplemented the record on July 29, 1985 with a Declaration of the Project Director for the Convention Center stating the tentative nature of the present designs for the Convention Center Complex and an additional analysis by project engineers of truck access via the Reading Viaduct to/from the Expressway from/to the Convention Center. Plaintiff responded to defendants' supplemental information on August 9, 1985.

## DISCUSSION

The National Environmental Policy Act of 1969 ("NEPA") articulates "a national policy [to] encourage productive and enjoyable harmony between man and his envi-

---

1. Air and noise pollution remained relevant to the extent that if, as plaintiff contended, defendants relied on inaccurate traffic data, then their estimates of changes in noise and air pollution would also be incorrect.

ronment." 42 U.S.C. § 4321. Although NEPA establishes "significant substantive goals for the Nation," its mandate is "essentially procedural," *Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.,* 435 U.S. 519, 558, 98 S.Ct. 1197, 1198, 55 L.Ed.2d 460 (1978). NEPA requires that agencies prepare a detailed draft and final Environmental Impact Statements ("EIS") concerning environmental consequences in connection with "every recommendation or report or proposal for legislation and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(c).

Because even an accepted final EIS may be rendered inadequate when new circumstances arise that affect the environmental impacts of a proposed project, the Council on Environmental Quality ("CEQ") has set standards governing when an agency must supplement its EIS.[2] According to CEQ regulations:

Agencies shall prepare supplements to either draft or final environmental impact statements if ... [t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.

40 CFR 1502.9(c)(1)(ii) (1985). *See also* 23 CFR 771.129 (1985).

The "significance" of new circumstances or information is to be determined based on considerations of context and intensity:

*Context.* This means that the significance of an action must be analyzed in several contexts such as society as a whole (human, national), the affected region, the affected interests, and the locality....

*Intensity.* This refers to the severity of impact.... The following should be considered in evaluating intensity....

(7) Whether the action is related to other actions with individually insignificant

but cumulatively significant impacts. Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment. Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts.

40 C.F.R. 1508.27 (1985). To determine whether changes have occurred (or are anticipated) in the relevant environment sufficiently significant to warrant a SEIS, federal regulations require preparation of a Reevaluation of Project Proposals. 23 C.F.R. 771.129.[3]

The standard for judicial review of an agency Reevaluation that concludes not to prepare a SEIS is not articulated in either NEPA or CEQ regulations. The Third Circuit has reserved decision on the proper standard to apply in reviewing an agency decision not to revise or prepare an EIS. The Third Circuit has "assume[d], without deciding, that an agency's determination not to [revise] an EIS must be 'reasonable under the circumstances....' " *Township of Lower Alloways Creek v. Public Service Electric & Gas Co.,* 687 F.2d 732, 742 (3d Cir.1982) (citations omitted). *See also Township of Springfield v. Lewis,* 702 F.2d 426, 437 (3d Cir.1983). This court will assume the applicability of a reasonableness standard.

Concerned Citizens claimed that the proposed Convention Center was a significant new circumstance and a Vine Street SEIS was necessary "to permit full consideration of all possible alternatives regarding ramp and exit locations and design and traffic flows in order to promote efficient traffic patterns and to mitigate adverse environmental impacts of traffic congestion, and pollution and noise in the joint area of the Expressway and Convention Center." (Plaintiff's Brief at 2). Plaintiff's motion for summary judgment and response to defendants' supplement took issue with certain data and documentation used in the

---

2. These CEQ standards must be followed by all federal agencies. *See Andrus v. Sierra Club,* 442 U.S. 347, 99 S.Ct. 2335, 60 L.Ed.2d 943 (1979).

3. Because the Government agreed at the preliminary injunction hearing to prepare a Reevaluation, it is not necessary to discuss when a Reevaluation is required.

FHWA's Reevaluation to consider traffic congestion. Plaintiff did not proffer any expert testimony or affidavits that would place evidentiary facts in dispute, but maintained that the FHWA failed as a matter of law to apply appropriately the NEPA and CEQ standards.

Defendants countered that plaintiff failed to meet its burden of proof by presenting specific evidence of FHWA error. Defendants noted that in *Township of Springfield v. Lewis,* the Court of Appeals found an expert's affidavit offered by plaintiff insufficient to defeat defendants' motion for summary judgment where the affidavit, which considered predictions of traffic levels, consisted of "vague, unsupported opinion." 702 F.2d at 439–41, n. 23 and 26. *See also National Center for Preservation Law v. Landrieu,* 496 F.Supp. 716, (D.S.C.), *aff'd,* 635 F.2d 324 (4th Cir.1980) *(per curiam):*

> Those opposing the agency action on NEPA grounds must advance evidence which is substantial and dependable to prove that an EIS is fatally flawed or a NEPA complaint will not withstand a motion for summary judgment.

496 F.Supp. at 737 (citations omitted).

This court agrees with defendants and determines that evaluation of "significant impacts" is, in the absence of extraordinary circumstances, a factual matter. The cases cited by plaintiff do not support the proposition that an environmental change comparable to the proposed Convention Center, in its present proposed form, on the Expressway is, as a matter of law, "significant" as defined by the CEQ. In *Township of Springfield v. Lewis,* the Third Circuit upheld the district court's conclusion that new studies on matters including air-quality, noise, industrial impact, and traffic did not require revision of a draft EIS. The Court there distinguished the Fifth Circuit case of *Environmental Defense Fund v. Marsh,* 651 F.2d 983 (5th Cir.1981), which required a supplemental EIS where changes in a waterway project involved a 50% increase in land to be used for the project and a 350% increase in traf-

fic. The Convention Center's potential impact is not of a comparable magnitude.

Most other cases cited by plaintiff requiring additional environmental review of highway design reflect the inadequacy of the initial EIS. *See, e.g., Sierra Club v. United States Army Corps of Engineers,* 701 F.2d 1011 (2d Cir.1983) (upholding district court's determination that SEIS required where FEIS conclusions rested upon partially false data); *Lathan v. Volpe,* 350 F.Supp. 262 (W.D.Wash.1972), *aff'd in part and vacated in part,* 506 F.2d 677 (9th Cir.1974) (inadequacy of original EIS). Even in *Essex County Preservation Association v. Campbell,* 536 F.2d 956 (1st Cir. 1976), where the First Circuit upheld the district court's decision that the Governor's moratorium on any extension of I–95 south of Route 128 was significant new information concerning the I–95 reconstruction project requiring a supplemental EIS, the First Circuit Court of Appeals stated only that "we cannot say it was improper for the district court to require ... a supplemental EIS...." *Id.* at 961.

Therefore, plaintiff's motion for summary judgment fails, but we must also consider whether defendants prevail on their motion for summary judgment because their decision not to prepare a Vine Street SEIS was under the circumstances reasonable as a matter of law.

The FHWA's Reevaluation and Traffic Update analyzed the traffic volumes and patterns to/from the Expressway/Convention Center area by applying the Convention Center DEIS's worst traffic scenario data to the Vine Street analysis. The agency evaluated critical lane movements in the proposed vicinity of the Convention Center Complex and concluded that the Convention Center would not significantly affect traffic volume generally but that on peak days when there was significant effect, the proposed Expressway was well-equipped to deal with the additional vehicles. Because of the court's concern that the Reevaluation and Update did not sufficiently consider the impacts of truck access to and from the Expressway and service roads via the

Reading Viaduct or of truck parking at the Convention complex, the FHWA then considered these matters specifically in its supplementary materials. The agency found that the width of the Reading Viaduct would provide for sufficient flexibility in later designs of the truck ramp and that there would be a minimal impact on Expressway traffic.

■ After considering the Government's Administrative Record and the arguments of counsel, we find that the defendants have met their burden of proving the reasonableness of their decision not to prepare a SEIS. Defendants have demonstrated that the Expressway will be equipped to handle the increased traffic caused by the Convention Center if developed generally as proposed. The projected increase in the Expressway traffic is not quantitatively or qualitatively significantly different from what was considered in the FEIS. *See Environmental Defense Fund v. Marsh,* 651 F.2d at 996. Increased traffic congestion on the local streets near the Convention complex will be caused by the Convention Center rather than the Expressway. The congestion would be appropriately considered in further criticism and evaluation of the Reading Terminal area as an appropriate site for the Convention Center.

Moreover, the May 17, 1985 Traffic Update sufficiently clarified the Expressway traffic flows so that the court is convinced that there will be feasible—if not easy—access from/to the Expressway to/from the Convention Center. The 8th and 15th Street Expressway entrances and exits are within a few blocks of the proposed Convention complex at 11th–13th Streets, and the North and South service roads will provide direct access to the complex. While better planning might provide for a "Convention Center Only" Expressway entrance/exit, this court does not view it unreasonable for the FHWA to determine that the previously planned points of access are sufficient.

Additionally, the July 29, 1985 supplement has satisfied this court that the Reading Viaduct will probably provide sufficient

road access and parking space for trucks bound for the Convention complex; the width of the Viaduct allows sufficient flexibility for traffic adjustments if they become necessary. The District Engineer wrote to Pennsylvania's Deputy Secretary for Highway Administration on July 17, 1985 that

the truck ramp [to be located along the South Service Road between 11th and 12th Streets] would be constructed by the Convention Center developers in the area presently occupied by the Reading Viaduct. The ramp is proposed to intersect the South Service Road as a driveway and would, at that point, be level with the service roadway surface.... The driveway should be so designed that right turn movements from the South Service Road onto the truck ramp would have a reduced effect on operations on the Service Road.

(Administrative Record 276). As of that time, no specific proposals for the truck ramp driveway had been prepared but the District Engineer also stated that both the state highway and city streets departments would have to review and approve specific design proposals. (Administrative Record 276).

As is implicit in the comments of the District Engineer, defendants cannot be expected to consider with detailed specificity all the effects of the Convention Center when the Convention Center proposal is still tentative and general rather than definite and detailed. Because of its uncertain nature, the Convention Center's impacts are necessarily of low intensity within the overall context of the Expressway project. *See* 40 CFR 1508–27 (1985). We find it only logical that the amount of detailed planning required regarding new circumstances should vary directly with the likelihood that any potential impact will become a reality. If and when the Convention Center proposal eventuates in view of present political and financial problems, its Final EIS will then consider in greater detail design of the access ramps and traffic and parking for the complex.

Planning for the Expressway has been underway for many years. The two-volume Vine Street FEIS was approved by the FHWA in September, 1983. If we require the Government to prepare a supplemental EIS [4] each time any new project is proposed in Center City Philadelphia, actual construction will be endlessly and needlessly delayed. The time has come for new projects to adjust to the Vine Street Expressway as it will be constructed.

We find that defendants have considered the Convention Center's potential impacts to a reasonable extent. Because of the Government's desire not to be unnecessarily delayed by what it considered a tentative proposal that might never come to fruition, it is understandable that the Government's initial Reevaluation was somewhat cursory. However, the court is now satisfied that the Government's completed analysis fully satisfies NEPA and is reasonable under the circumstances. Summary judgment will be granted for federal and state defendants. It will be so ordered.

---

**4.** A supplement to a FEIS must be developed in substantially the same manner as a new EIS, with draft and final stages, circulation and public comment, and a Record of Decision. 23 CFR 771.129(b).