ATLANTIC TERMINAL URBAN RENEWAL AREA COALITION, John Theodore Glick, Anne McClellan, Loraine Oliver, and Mildred Davis, Plaintiffs,

v.

NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION; New York City Public Development Corporation; New York City Board of Estimate; Edward I. Koch; Harvey W. Schultz; New York City Planning Commission; Sylvia Deutsch; United States Environmental Protection Agency; William K. Reilly; United States Department of Housing and Urban Development; and Jack F. Kemp, Defendants.

No. 87 Civ. 4242(MEL).

United States District Court, S.D. New York.

Feb. 7, 1989.

See also 700 F.Supp. 173.

Edward Copeland, Elizabeth St. Clair, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, for plaintiffs.

Peter L. Zimroth, Corp. Counsel of the City of New York (Jeffrey Schanback, John De Angeli, Asst. Corp. Counsels, of counsel), New York City, for municipal defendants.

Benito Romano, Acting U.S. Atty., S.D. N.Y. (Richard W. Mark, Richard M. Schwartz, Asst. U.S. Attys., S.D.N.Y., of counsel), New York City, for Federal defendants.

David M. Kaplan, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C.

Richard Roos–Collins, Office of General Counsel, U.S. E.P.A., Washington, D.C.

Lisa Burianek, Asst. Regional Counsel, U.S. E.P.A., Region II, New York City.

Gershon M. Ratner, Washington, D.C., Associate General Counsel for Litigation.

Jonathan Strong, Sr. Trial Atty.

John A. Martin, Trial Attorney, U.S. Dept. of Housing & Urban Development.

Donald J. Reed, Office of General Counsel, U.S. Dept. of Commerce, Washington, D.C.

LASKER, District Judge.

Atlantic Terminal Urban Renewal Area Coalition and several individuals (collectively "ATURA") who live in the vicinity of the proposed Atlantic Terminal and Brooklyn Center Projects ("the Project") move to amend their complaint to add three claims (claims six through eight), as well as a new defendant. The underlying suit, as well as the proposed amendments, address the effect of the Project on the quality of the surrounding air and, more specifically, the effect of the Project on the concentration of carbon monoxide in the environs. The motion is denied, with the exception of leave to add claim eight against the municipal defendants on which decision is deferred.

The parties do not dispute the legal standard governing the motion. Although leave to amend "shall be freely given," leave should be denied where it shall cause "undue delay or prejudice to the opposing party," *Clay v. Martin*, 509 F.2d 109, 113 (2d Cir.1975), or "where plaintiff's proposed amendment advances a claim or defense that is legally insufficient on its face or otherwise clearly without merit...." *Feldman v. Lifton*, 64 F.R.D. 539, 543 (S.D.N.Y.1974). What the parties do dispute, however, is whether the three proposed claims are legally sufficient or whether they will cause undue delay if granted. The arguments of each defendant are addressed in turn.

I. Environmental Protection Agency

The United States Environmental Protection Agency and its Administrator William K. Reilly[1] (collectively "EPA") oppose ATURA's motion for leave to amend to add claim six, which alleges a violation of § 113(a)(1) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(a)(1). Section 113(a)(1) states:

Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of any requirement of an applicable implementation plan, the Administrator shall notify the person in violation of the plan and the State in which the plan applies of such finding. If such violation extends beyond the 30th day after the date of the Administrator's notification, the Administrator may issue an order requiring such person to comply with the requirements of such plan or he may bring a civil action in accordance with subsection (b) of this section.

Although the Administrator has not made a formal finding, ATURA contends that he has found that the City of New York violated ¶ 3.6(A) of New York's State Implementation Plan ("SIP"), which provides in relevant part that:

if an EIS [Environmental Impact Statement] for a project proposal identifies a violation or exacerbation of the carbon monoxide standard, then the City commits to assure that mitigating measures will be implemented by the project sponsor or City, so as to provide for attainment of the standard by December 31, 1987 and maintenance of it thereafter.

ATURA contends that the city is in violation of ¶ 3.6(A) because the Final Environmental Impact Statement ("FEIS") for the Project indicates that, even with mitigation measures, the locations surrounding the Project will not comply with the carbon monoxide standard by December 31, 1987. ATURA also relies for support of its allegation that the EPA has found a violation on a letter dated October 16, 1986 from Barbara Pastalove, Chief of the Environmental Impacts Branch of Region II of the EPA, to Michael P.M. Spies, Assistant Vice President of the New York City Public Development Corporation, which states in relevant part that the mitigation plans for the Project "do not meet Clean Air Act requirements and could not receive EPA approval if submitted as control measures for the [carbon monoxide] hot spots identi-

---

1. At the time this motion was made and briefed, Lee M. Thomas was the Agency Administrator. On February 2, 1989, the Senate confirmed Reilly's appointment.

fied by the EISs."[2]

The EPA contends that ATURA has done no more than establish that the agency has before it information that may enable it to make a finding that the City is in violation of the SIP. However, the EPA argues that it has not made such a finding nor can it be compelled to do so, because the duty to make such a finding is discretionary.[3] It is not disputed that § 304 of the CAA, 42 U.S.C. § 7604(a)(2), confers subject matter jurisdiction on the court only to compel the Administrator to perform a mandatory duty. *Council of Commuter Org. v. Metropolitan Transp. Auth.*, 683 F.2d 663, 665 (2d Cir.1982).

■ At issue is the nature of the Administrator's duty as specified in § 113(a)(1) of the Act to "find" the existence of a violation. For a number of reasons, I find more persuasive the reasoning of those courts that have construed the duty to "find" a violation under § 113 and parallel provisions of the Federal Water Pollution Control Act ("FWPCA") as discretionary more persuasive than those that have found the duty mandatory. *Compare Dubois v. Thomas*, 820 F.2d 943, 947 (8th Cir.1987) (holding duty to find a permit violation under § 309(a)(3) of FWPCA, 33 U.S.C. § 1319(a)(3), not mandatory); *Harmon Cove Condominium Ass'n v. Marsh*, 815 F.2d 949, 953 (3rd Cir.1987) (duty of Secretary under § 404 of FWPCA, 33 U.S.C. § 1344, to find a violation is discretionary); *Seabrook v. Costle*, 659 F.2d 1371, 1375 (5th Cir.1981) (section 113(a) of the CAA "does not impose a nondiscretionary duty to make a finding on every alleged violation of a SIP"); *Council of Commuter Org. v. Metropolitan Transp. Auth.*, 524 F.Supp. 90, 92 (S.D.N.Y.1981) (duty to issue notices of violation arises only after Administrator "makes a discretionary finding that such violations have occurred"), *aff'd*, 683 F.2d 663 (2d Cir.1982)[4] *with New England Legal Found. v. Costle*, 475 F.Supp. 425, 433 (D.Conn.1979) (the Administrator has been held "to make ... a finding [of a SIP violation pursuant to § 113(a)(1)] when information regarding an alleged violation is presented to him"), *aff'd in part and reserved in part*, 632 F.2d 936 (2d Cir.1980); *Wisconsin's Envtl. Decade, Inc. v. Wisconsin Power and Light Co.*, 395 F.Supp. 313, 320 (W.D.Wis.1975) ("when presented with evidence indicating that a violation may exist [under § 113(a)(1)], the Administrator must make a finding that a violation does or does not exist"); *Marinoff v. EPA*, No. 78-3042 (S.D.N.Y. Nov. 22, 1978) (citing language of *Wisconsin* but finding that neither party indicated whether Administrator has been presented with evidence of a violation).

First, the language of § 113 does not compel a holding that the Administrator must make a finding whenever he or she is informed of an alleged violation. As is true of the language of § 309(a)(3) of the FWPCA, the language of § 113(a)(1) "makes no mention whatever of a duty to make findings, much less a duty to carry out an investigation of each and every citizen complaint." *Dubois v. Thomas*, 820 F.2d at 947.

---

**2.** Plaintiffs' Notice of Motion, Exhibit D at 1.

**3.** The federal defendants in a footnote argue persuasively that ATURA failed to provide the requisite 60 days notice of intent to sue on this claim. 42 U.S.C. § 7604(b)(1)(A). Although some circuits have construed the 60 days notice to be jurisdictional, *West Penn Power Co. v. Train*, 522 F.2d 302, 307 (3d Cir.1975), *cert. denied*, 426 U.S. 947, 96 S.Ct. 3165, 49 L.Ed.2d 1183 (1976), *Highland Park v. Train*, 519 F.2d 681, 690–91 (7th Cir.1975), *cert. denied*, 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337 (1976), this circuit has adopted a more flexible approach and held that the notice provision is to be construed to serve the purpose of enabling the EPA to investigate and act upon the alleged violation. *Friends of the Earth v. Carey*, 535 F.2d 165, 175 (2d Cir.1976), *cert. denied, Beame v. Friends of the Earth*, 434 U.S. 902, 98 S.Ct. 296, 54 L.Ed.2d 188 (1977); *Natural Resources Defense Council v. Callaway*, 524 F.2d 79, 84 n. 4 (2d Cir.1975); *Wilder v. Thomas*, 659 F.Supp. 1500, 1511 (S.D.N.Y.1987), *aff'd*, 854 F.2d 605 (2d Cir.1988). Here, as in *Wilder*, "[a] realistic application of the notice requirement in this case would not be achieved by rejecting the complaint for a technical failure to give a notice separate from the complaint. It is in the interest of justice to deal with the complaint on the merits." *Wilder*, 659 F.Supp. at 1511.

**4.** Although the case was affirmed, the court of appeals did not address the nature of the Administrator's duty to make a finding.

Second, a construction of the statute, like that of *Wisconsin* and *New England Legal Foundation*, requiring the Administrator to determine whether a violation exists each time an allegation is made, could frustrate the purpose of the Act. Although investigations of every alleged violation may be ideal, limited time and resources constrain the Administrator; as the court in *Seabrook* reasoned, a rule requiring investigations at the drop of an allegation would more likely than not divert resources from efficient and effective investigations of violations appearing most egregious. 659 F.2d at 1375. *See also Dubois v. Thomas*, 820 F.2d at 947 (holding that goal of FWPCA would be frustrated were Secretary to have mandatory duty to investigate and find permit violations because agency would not be able to concentrate its energies on those claims considered most egregious).

Third, § 113 involves questions of the Administrator's prosecutorial discretion, which should be limited only if the language of the statute or the congressional history were to indicate more clearly a mandatory duty. As *Seabrook, Dubois*, and *Harmon Cove* have held, decisions to take enforcement activity are generally committed to agency discretion in the absence of statutory language or legislative history to the contrary, and the "principle of almost absolute discretion in initiating enforcement action should apply with equal force to the decision to take the preliminary investigatory steps that would provide the basis for enforcement action." *Seabrook*, 659 F.2d at 1374.

Of course it can be argued, as in *Wisconsin,* that

[b]ecause ... Congress made a deliberate decision that the duty to issue notices of violation should be non-discretionary, I cannot accept an interpretation of the language of § [113(a)] which would make this duty an empty one by permitting the Administrator to make a finding or not make a finding as he or she sees fit.[5]

395 F.Supp. at 320. However, other language in § 113 belies this interpretation. Section 113 provides that if the violation continues after the notice is issued:

the Administrator may issue an order requiring such person to comply with the requirements of such plan or he may bring a civil action....

This language has been interpreted to give the Administrator discretion not only as to the form the enforcement may take, but also whether to take *any* enforcement action. For example, in *Kentucky ex rel. Hancock v. Ruckelshaus*, 497 F.2d 1172, 1177 (6th Cir.1974), *aff'd, Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976), the plaintiff sought an order compelling the EPA to initiate an action under § 113 to obtain full compliance with the SIP. The court held that, unlike the duty to issue notices of violation, the Administrator's duty under § 113 to enforce a requirement of the plan is discretionary and, accordingly, the court did not have jurisdiction to review the EPA's decision not to commence an action under § 113. Similarly, in *New England Legal Found. v. Costle*, 475 F.Supp. at 433, Judge Newman stated that "once a Notice of Violation has been issued, the decision to proceed further is discretionary with EPA, and is not subject to review." Thus, holding the Administrator's duty to make a

---

**5.** It is true that both the language of the statute and the case law interpreting § 113 indicate that the Administrator has a mandatory duty to issue a notice of violation *if* she or he finds that a violation is occurring. Section 113(a)(1) states that the Administrator, upon finding a violation, "shall" issue a notice of violation, a term normally construed to indicate a mandatory duty. *See Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S.Ct. 428, 430, 91 L.Ed. 436 (1947). Moreover, the majority of courts addressing this question have concluded that the Administrator has a mandatory duty to issue a notice of violation

upon finding a violation of the SIP. *See Council of Commuter Org. v. Metropolitan Transp. Auth.*, 683 F.2d 663, 671–72 (2d Cir.1982) (EPA has a non-discretionary duty to issue a notice of violation under § 7413 whenever it determines that a violation has occurred); *New England Legal Found. v. Costle*, 475 F.Supp. 425, 433 (D.Conn. 1979) (same) *aff'd in part and reserved in part*, 632 F.2d 936 (2d Cir.1980); *Marinoff v. EPA*, No. 78–3042 (S.D.N.Y. Nov. 22, 1978) (same). *But see Seabrook v. Costle*, 659 F.2d 1371, 1374 n. 3 (5th Cir.1981).

finding to be discretionary will not undermine or thwart the purpose of § 113.

Finally, as is apparent in this case, the statutory scheme supports, although it does not compel, the holding that the Administrator's duty to find a violation is discretionary. In this case, the Regional Administrator of the EPA has notified Governor Cuomo that the air in the New York City metropolitan area failed to comply with the national ambient air quality standards for ozone and carbon monoxide and that the SIP accordingly requires revision pursuant to § 110 of the CAA, 42 U.S.C. § 7410.[6] ATURA's construction of the statute would require the Administrator, in each instance in which SIP revision is required because of non-attainment in a region, to issue a notice of violation. It would thereby prevent the EPA from selecting among a range of remedies available to address non-attainment and choosing, as it has in this case, to initiate the SIP revision process, rather than to pursue individual violations.

The construction of the Administrator's duty to make a finding when informed of an alleged violation as discretionary comports with, rather than frustrates, not only § 113, but the Act as well. Plaintiffs in this action are not left without a remedy; alleged violations of an applicable SIP need not, as a result of this decision, go unaddressed. Section 304(a)(1) of the Act provides for a citizen suit

> against any person ... who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation....

Plaintiff can, as it has already done in claim one of this action, bring suit against the responsible agencies and officers of the City of New York for this alleged violation of ¶ 3.6(A) of the SIP.

For the reasons stated above, plaintiffs' motion to amend the complaint to add the sixth claim against the EPA, charging it with failure to issue a notice of violation to the City under § 113, is denied.

## II. Department of Commerce

■ The Department of Commerce and its Secretary Robert A. Mosbacher, Sr.[7] (collectively "DOC"), not presently party to this action, argue that leave to add claims seven and eight should be denied because, on their face, the claims lack merit. Claim seven alleges in relevant part:

> Defendants DOC [Department of Commerce] and Secretary [Mosbacher] acted arbitrarily, capriciously, in abuse of discretion and not in accordance with § 7506(c) of the Clean Air Act by approving a public works grant for the Project in spite of the City's nonconformance with New York State's carbon monoxide plan, in violation of 5 U.S.C. § 706.[8]

Section 7506(c) of the Act states in relevant part:

> No department, agency or instrumentality of the Federal Government shall ... support in any way or provide financial assistance for ... any activity which does not conform to [an approved SIP]....

Claim eight states in relevant part: [9]

> Federal defendants DOC and Secretary [Mosbacher] have violated [the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*] or will imminently violate NEPA by approving a grant to the City for the Project where the FEIS

---

**6.** Plaintiffs' Notice of Motion, Exhibit G (Letter of May 26, 1988 from Christopher J. Daggett, Regional Administrator of Region II of the EPA, to New York State Governor Mario M. Cuomo).

**7.** The Secretary of Commerce at the time this action was commenced and the motion made was C. William Verity. Mosbacher's appointment was confirmed on February 3, 1989.

**8.** Claim four alleges an identical violation against the United States Department of Hous-

ing and Urban Development and its Secretary ("HUD"), which has given preliminary approval to an application by the City for an Urban Development Action Grant ("UDAG"). HUD's motion to dismiss that claim was denied in an earlier decision; HUD's motion to reargue is currently pending.

**9.** HUD and the municipal defendants are also named in claim eight.

for the Project is based upon inaccurate and incorrect assumptions and information resulting in underestimates of the air quality effects of the Project and by not requiring a supplemental EIS to assess the significant changes since preparation of FEIS.

Both claims center on DOC's award of a grant of several million dollars, made pursuant to the Public Works and Economic Development Act, 42 U.S.C. § 3121 et seq., for demolition of existing structures on the Project site.

The complaint does not allege that the demolition itself poses a threat to the environment or that the environmental analysis assessing the impact of the demolition—and concluding that it "will not significantly affect the quality of the human environment" [10]—is inadequate. However, plaintiffs maintain that the fact that the demolition is meant to further and prepare for construction of the Project is sufficient to place DOC in the position of having or sharing responsibility for the environmental analysis and impact of the Project.[11] In the absence of law on this point, I conclude that DOC's support of the demolition should not be construed as support of the Project within the meaning of § 7506(c) and accordingly deny leave to add the proposed claims against the DOC.

There is no question that the language of § 7506(c) specifying that "no ... agency ... shall ... support in any way ... an activity which does not conform to [an approved SIP]" is broad. ATURA places the emphasis on the words "support in any way" in the statute, arguing that DOC is undoubtedly supporting the ultimate development of the Project. However, the critical question is whether the site clearance or the Project is properly considered the "activity". I conclude that the "activity" DOC is supporting is only the site clearance and thus that leave to amend must be denied because there is no allegation in the amended complaint that the site clearance does not conform to New York's SIP.

ATURA's construction of § 7506(c) would require every agency that in any way supports any activity to evaluate in detail the environmental impact of every component of the larger whole. Not only would this be an unreasonably arduous task that would excessively tax the resources of budget-limited federal agencies, but it would also mandate duplicative efforts. For example, to evaluate the sufficiency of the assumptions of the FEIS, as ATURA maintains DOC is responsible to do, DOC would have to conduct a very detailed analysis of the FEIS, and perhaps even repeat some of the analysis. *Cf. Colony Fed. Sav. & Loan Ass'n v. Harris*, 482 F.Supp. 296, 303 (W.D.Pa.1980) (concluding that HUD could not review challenges to EIS without performing its own study). Although such a ruling might ensure marginally more thorough checks on the environmental analysis, it would diffuse responsibility and waste resources.

In addition, even if DOC's grant were construed to support the Project within the meaning of § 7506(c) and thus to obligate DOC to review the environmental impact of the entire Project, there is no logical, let alone compelling, reason to charge DOC with greater responsibility to review the substance of the FEIS than HUD, the federal agency which unquestionably provides the greatest assistance for the Project. In spite of the centrality and size of HUD's

---

**10.** Declaration of Richard W. Mark (September 23, 1988), Exhibit A (Environmental Impact Determination and Necessary Environmental Findings for Atlantic Terminal Project—Site Clearance, Brooklyn, New York).

**11.** Both the environmental analysis and the statutory scheme under which the DOC grant was awarded clearly indicate that the site is being cleared specifically *for the Project.* The environmental analysis for the demolition captions the subject as "Environmental Impact Determination and Necessary Environmental Findings

for Atlantic Terminal Project—Site Clearance." The attached environmental checklist refers to the EIS for the Project for six of the nineteen items on the list. The provision of the Public Works and Economic Development Act pursuant to which the grant was awarded, 42 U.S.C. § 3131(a), authorizes grants for projects that tend to improve the opportunities for expansion of industrial or commercial plants and facilities, create employment opportunities, address a pressing need of the area, or are undertaken as part of an overall economic development plan.

support for the Project, however, the law permits it to delegate its substantive CAA and NEPA responsibilities to the City, pursuant to 42 U.S.C. § 5304(f)(1), and it has done so in this case.[12] *Cf. National Center for Preservation Law v. Landrieu,* 496 F.Supp. 716, 740 (D.S.C.) (holding Economic Development Administration had properly delegated its National Historic Preservation Act responsibilities, as did HUD, pursuant to 42 U.S.C. § 5304(f)(1)), *aff'd,* 635 F.2d 324 (4th Cir.1980).

In sum, I conclude that DOC's grant for demolition—an activity not said to have adverse environmental consequences—does not provide a basis for holding it responsible for the environmental analysis and impact of the Project.

### III. Department of Housing & Urban Development

In the eighth claim, ATURA also alleges that the United States Department of Housing and Urban Development and its Secretary Jack F. Kemp [13] (collectively "HUD") has or will imminently violate NEPA by approving a UDAG grant for the City for the Project because the FEIS for the Project is based on inadequate air quality analysis and a supplemental EIS is necessary. HUD responds that ATURA's claim is legally insufficient, because HUD has delegated its NEPA responsibilities to the City, as the grant applicant, pursuant to 42 U.S.C. § 5304(f)(1), which states in relevant part that:

> the Secretary ... may under regulations provide for the release of funds for particular projects to recipients of assistance under this chapter who assume all of the responsibilities for environmental review, decisionmaking, and action pursuant to [NEPA], and such other provisions of law as the regulations of the Secretary specify, that would apply to the Secretary were he to undertake such projects as Federal projects.

The City, in its grant application, certified that it would assume the status of HUD for environmental review, decision-making, and action pursuant to NEPA and other environmental statutes. It also consented to accept the jurisdiction of the federal courts for enforcement of the environmental statutes.

Section 5304(f)(1) has consistently been construed to authorize HUD to delegate its NEPA responsibilities and thereby relinquish all substantive responsibilities for preparation of the EIS. *See Brandon v. Pierce,* 725 F.2d 555, 560 (10th Cir. 1984) (holding that Congress intended to permit HUD to transfer NEPA responsibilities to grant applicants); *Colony Fed. Sav. & Loan Ass'n v. Harris,* 482 F.Supp. at 303 (holding that HUD did not have a duty to prepare a separate EIS or to evaluate critically the substance of EIS prepared by grant applicant); *Monarch Chem. Works, Inc. v. Exon,* 466 F.Supp. 639, 646 (D.Neb. 1979) (holding HUD had delegated NEPA responsibilities and thus was not responsible in case challenging recipient's decision not to file EIS), *aff'd,* 604 F.2d 1083 (8th Cir.1979). After such delegation, HUD retains a duty only to ensure that the grant applicant complies with procedural requirements.

The alleged deficiencies in the FEIS clearly go to its substantive adequacy, rather than the City's satisfaction of the procedural requirements of a UDAG application. *See e.g. Colony Fed.,* 482 F.Supp. at 303 (HUD had no obligation to evaluate the findings of applicant's environmental analysis, including, among others, the county's "lack of consideration of the chronic particulate count in air quality, omission of increased vehicular traffic and increased noise levels, insufficient documentation...."). A critical review of the environmental record, in *Colony Federal* as well as the case at hand, would likely require HUD to perform an independent

---

12. HUD remains a defendant at present to the fourth claim alleging a CAA violation identical to that made against DOC in claim seven only because it has received notice of the Project's noncompliance with the New York SIP; DOC is not alleged to have received any similar notice.

13. Throughout the pendency of this action, until February 2, 1989, Samuel R. Pierce, Jr. was the Department's Secretary. Kemp's appointment was confirmed on February 2.

study, which would counter the language and purpose of § 5304(f). *See also South Portland Ave. Block Ass'n, Inc. v. Pierce,* No. 87–4210 (E.D.N.Y. Sept. 23, 1988) [1988 WL 101306] (granting HUD's motion to dismiss NEPA claim contending that DEIS and FEIS for this project were inadequate because claims went to substance, not procedural defects).

Similarly, ATURA's allegation that changed circumstances require preparation of a supplemental EIS ("SEIS") involves the substance of the environmental review process. Although no case poses an identical question, *Dickeyville Ass'n v. United States Dep't of Hous. & Urban Dev.,* 636 F.Supp. 362 (D.Md.1986), addresses a sufficiently analogous issue. In *Dickeyville,* the plaintiff argued that the City's failure to prepare an EIS was the "omission of a required decision finding" and as such was a procedural omission. *Id.* at 367. The court held that the City's decision not to file an EIS was substantive, but stated that

under certain circumstances, a decision not to follow an environmental assessment with an environmental impact statement might be deemed procedural. For example, if the City had completed its environmental assessment and concluded that the proposed project did have a significant impact on the environment, then perhaps the City's failure to proceed to the second step of the environmental analysis might be deemed a procedural error for which HUD remains responsible.

*Id.* In this case, ATURA makes no claim that the City found an SEIS to be necessary, so that the decision not to file an SEIS might be regarded as procedural rather than substantive.

The authority cited by ATURA is not to the contrary. In both *Grazing Fields Farm v. Goldschmidt,* 626 F.2d 1068 (1st Cir.1980) and *Vine St. Concerned Citizens, Inc. v. Dole,* 604 F.Supp. 509 (E.D.Pa.1985), the court was asked to review a challenge to an EIS prepared and approved by a federal agency itself or the agency acting with the local government, rather than one prepared by a grant applicant pursuant to

the agency's delegation of that responsibility. Those cases, unlike the one at hand, did not question the extent of an agency's duty to review the grant applicant's assumption of its environmental responsibilities arising under 42 U.S.C. § 5304(f).

ATURA argues that, even if the alleged violations are substantive there are nevertheless two reasons why HUD is not absolved of all responsibility at this point. ATURA looks for support for both of these arguments to this court's decision of September 26, 1988 denying HUD's motion to dismiss a CAA claim despite HUD's delegation on the grounds that an

October 16, 1986 letter of the EPA [stating that the mitigation plans for the Project do not satisfy the CAA and could not receive EPA approval] put HUD on notice that the environmental review record in this case does not presently comply with HUD regulations and, in addition, there is a serious question whether HUD has satisfied its responsibilities under NEPA until it approves the grant applicant's certification, which accompanies the [Request for Release of Funds].

697 F.Supp. 666, 671 (S.D.N.Y.1988). These arguments are addressed in turn.

First, ATURA alleges that the letter of October 16, 1986 put HUD on notice of the alleged NEPA violations, as well as the CAA violations involved in claim four. The argument is not persuasive because the letter does not explicitly call attention to alleged NEPA insufficiencies enumerated in the complaint.

Second, it is true here, as it was in the September 26 decision, that the City has not yet certified that it has complied with the environmental review responsibilities and that it cannot do so until it submits a request for release of funds. However, HUD has persuasively argued that, contrary to the dicta of the September 26 decision, it may relinquish responsibility for compliance with the environmental statutes when the City certifies that it will undertake the environmental review and

consents to the federal court's jurisdiction ("the first certification").[14]

As was discussed in greater detail in the September 26 decision, the statute, the regulations, and the case law cited therein state that the Secretary's approval of the applicant's certification that it has complied with the applicable environmental regulations ("the second certification") *satisfies* his environmental responsibilities. However, the point at which HUD satisfies its environmental responsibilities is not to be confused, as it was earlier, with the point at which HUD delegates those responsibilities. HUD delegates—or relinquishes—its environmental responsibilities at the time of the first certification, when the applicant assumes those responsibilities and the jurisdiction of the federal courts. From that point forward, the applicant undertakes all of the substantive environmental work and defends against all challenges to the inadequacy of such work; HUD is no longer responsible for the environmental review and decision-making. The second certification is, as HUD argues, a procedural marker only. At the time of the submission of the second certification and the request for release of funds, HUD is responsible only to review the procedural regularity of the application. Therefore, HUD has, by accepting the City's first certification, relinquished all substantive NEPA responsibilities; it cannot be said to have violated NEPA simply because it awaits the second certification.

In sum, ATURA is denied leave to amend the complaint to add claim eight against HUD. The NEPA challenges go to the substance of the environmental review, responsibilities HUD has delegated, and HUD has not been put on notice of any procedural deficiencies for which it is responsible.

**IV. Municipal Defendants**

■ Defendants New York City Department of Environmental Protection and its Commissioner Harvey W. Schultz, New York City Public Development Corporation, New York City Board of Estimate, New York City Planning Commission and its Chair Sylvia Deutsch, and New York City Mayor Edward I. Koch (collectively "the municipal defendants") challenge the sufficiency of proposed claim eight, which charges them with violating NEPA

> by preparing and relying upon an FEIS based upon inaccurate and incorrect assumptions and information resulting in underestimates of the air quality effects of the Project [and]....
>
> by failing to prepare a supplemental EIS ["SEIS"] to assess the significant changes since preparation of the FEIS.

Relying primarily on *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), in which the Court cautioned that challenges are not to be used cleverly to thwart or obstruct NEPA proceedings and refused to reopen administrative proceedings for consideration of the intervenors' challenges, the municipal defendants argue that ATURA is barred from now raising these NEPA objections, given its failure to do so throughout the public hearing and comment process on the DEIS and FEIS and its failure to explain its delay in raising these challenges. I decline to invoke a strict rule of preclusion, barring ATURA from raising these claims, in light of the public interest in ensuring the environmental soundness of the Project; this position finds support in environmental cases in which the rule of preclusion or the doctrine of laches is invoked.[15]

*Vermont Yankee* has been cited to support a rule of preclusion barring plaintiffs who do not object during the public com-

---

**14.** HUD makes this argument in a motion for reconsideration of the decision denying its motion to dismiss claim four.

**15.** Plaintiffs' argument that the challenges now before the court in claim eight were raised in administrative proceedings is not persuasive. Although comments were made during the ad-

ministrative process challenging the air quality analysis, plaintiff has pointed to no comments addressing the specific flaws enumerated in the complaint. As in *Vermont Yankee*, the general comments made on the FEIS cannot be construed to have called the City's attention to the deficiencies now alleged in plaintiffs' complaint.

ment process from later challenging a Project's compliance with NEPA. *Pennsylvania Protect Our Water v. Appalachian Regional Comm'n,* 574 F.Supp. 1203, 1215 (M.D.Pa.1982); *Wisconsin Heritages, Inc. v. Harris,* 490 F.Supp. 1334, 1338 (E.D.Wis.1980). However, such a strict rule of preclusion is not the norm. Frequently, the courts, although citing *Vermont Yankee,* address not only the timeliness, but also the merits of the NEPA challenges. *See e.g. Kentucky ex rel Beshear v. Alexander,* 655 F.2d 714 (6th Cir.1981); *Citizen's Comm. Against Interstate Route 675 v. Lewis,* 542 F.Supp. 496, 566 (S.D.Ohio 1982); *Woida v. United States,* 446 F.Supp. 1377, 1389 (D.Minn. 1978). Others simply reject the argument that the delay in raising the claims prevents their consideration, or at most consider the delay a factor to be weighed when evaluating the claims. *See County of Suffolk v. Secretary of Interior,* 562 F.2d 1368, 1385 (2d Cir.1977) (plaintiffs' failure to present evidence earlier was not preclusive, but might cast reflections on the probative significance of the belatedly-offered evidence), *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1238, 55 L.Ed.2d 764 (1978); *California v. Bergland,* 483 F.Supp. 465, 472 n. 5 (E.D.Cal.1980) (rejecting argument that plaintiff was barred from raising most of its contentions because it failed to raise them during the comment period, in part because claims were raised and in part because "laches and failure to exhaust administrative remedies are disfavored doctrines in NEPA cases"), *aff'd in part and rev'd in part* (all on other grounds), *California v. Block,* 690 F.2d 753 (9th Cir. 1982); *Jackson v. New York State Urban Dev. Corp.,* 67 N.Y.2d 400, 427, 503 N.Y.S. 2d 298, 311, 494 N.E.2d 429, 442 (1986) (stating that failure to raise challenges to FEIS under state environmental law during proceedings could not be overlooked when determining whether failure to discuss issue in FEIS was reasonable).

Just as some courts decline to adopt a rule of preclusion because of a concern that so doing would "in effect shift the burden of insuring the adequacy of the EIS to environmental challengers, even though the primary and nondelegable responsibility for providing such an analysis lies with the agency," *County of Suffolk,* 562 F.2d at 1385, many reject the defense of laches in environmental cases for fear that the public interest and purposes of the Act will otherwise not be served. "Nearly every circuit ... [has] recognized the salutary principle that '[l]aches must be invoked sparingly in environmental cases because ordinarily the plaintiff will not be the only victim of alleged environmental damage. A less grudging application of the doctrine might defeat Congress's environmental policy.'" *Park County Resource Council, Inc. v. United States Dep't of Agric.,* 817 F.2d 609, 617 (10th Cir.1987) (quoting *Preservation Coalition, Inc. v. Pierce,* 667 F.2d 851, 854 (9th Cir.1982) (collecting cases). *See also Rochester v. United States Postal Serv.,* 541 F.2d 967, 977 (2d Cir.1976) (applying laches but emphasizing its rare use); *Steubing v. Brinegar,* 511 F.2d 489, 495 (2d Cir.1975) (declining to apply laches given strong public interest in NEPA compliance).

"In most of the cases in which laches has been applied in the NEPA context, the project allegedly significantly affecting the quality of the human environment was nearly completed, rendering preparation of an EIS redundant." *Park County Resource Council,* 817 F.2d at 618–19. *See also Watershed Associates Rescue v. Alexander,* 586 F.Supp. 978, 985 (D.Neb.1982) ("In determining whether delay is prejudicial, a pertinent inquiry is whether substantial work on the project has been completed before suit was brought."). For example, in *Riverdale Envtl. Action Comm. v. Metropolitan Transp. Auth.,* 638 F.Supp. 99, 102–03 (S.D.N.Y.), *aff'd,* 797 F.2d 110 (2d Cir.1986), the court held that the doctrine of laches barred plaintiffs' motion to enjoin construction. Plaintiffs in that case had participated in planning discussions concerning the railway substations, yet waited 16 months before bringing suit to compel preparation of an EIS for a substation for electricity for the railroad as required by NEPA. By that time, $67 million had already been invested in the

project and construction had advanced to such a point as to make delay of the development impracticable. *See also Rochester v. United States Postal Serv.*, 541 F.2d at 977 (barring suit for laches; plaintiffs had waited two years prior to filing suit, at which time construction was 18 percent complete, and the court "was not persuaded that the further construction, in and of itself, will create such an adverse environmental impact, beyond that already incurred by partial construction, as to override the public interest in averting the economic waste").

Like these courts, I am reluctant, given the public interest in a sound environmental analysis and the long-term consequences of any poorly considered action, procedurally to bar environmental challenges of this nature except in particularly egregious cases. This is not such a case. The very pendency of this litigation already "prejudices" the defendants, to the extent it may delay or make more difficult—if not prohibit—the ultimate construction of the Project; addition of claim eight may have a cumulative, but not unduly burdensome, effect. Moreover, because construction has not yet begun, relief, if it is found to be warranted, "would still serve the public interest and the purposes of the Act." *Steubing v. Brinegar*, 511 F.2d at 495 (footnote omitted).

Nevertheless, plaintiffs' delay and their failure to explain the delay cannot be ignored. The FEIS was issued more than two years ago and the original complaint filed more than a year ago. Had plaintiffs raised these objections during the public comment period, the City could have responded prior to issuing the FEIS and incorporated any necessary changes in the FEIS and modified its plan for the Project, if necessary, without a further commitment of resources to the Project.

In an effort to accommodate both the public interest furthered by the NEPA claims and the interest in timely and less burdensome consideration of environmental challenges envisioned by the regulations requiring publication of and comment periods for environmental impact statements, while I decline at this time to preclude plaintiffs from adding claim eight against the municipal defendants, leave to amend will nevertheless be granted to add this claim if and only if the plaintiffs make a threshold showing that there is sound reason to believe that they may prevail on this claim. The evidentiary material submitted in support of plaintiffs' motion for a preliminary injunction will be evaluated to see if plaintiffs have made such a showing.

\* \* \* \* \* \*

ATURA's motion for leave to amend the complaint is denied with one exception; decision whether ATURA should be granted leave to amend the claim to add claim eight against the municipal defendants is deferred.

It is so ordered.