**DON'T RUIN OUR PARK, et al., Plaintiffs,**

v.

**Michael P.W. STONE, et al., Defendants.**

**No. CV–90–1115.**

United States District Court, M.D. Pennsylvania.

Sept. 14, 1990.

Christobal Bonifaz, Amherst, Mass., for plaintiffs.

Robert R. Long, Jr., U.S. Atty.'s Office, Scranton, Pa., A. Reid Allison, III, Office of Judge Advocate Gen., Dept. of the Army, Arlington, Va., for defendants— Stone, Conaway and Navas.

Linda Cadden Barrett, Office of Atty. Gen., Harrisburg, Pa., for defendant—Sajer.

## MEMORANDUM

McCLURE, District Judge.

### I. BACKGROUND

This is an action challenging the use of the Mid–State Airport ("Mid–State")[1] as the base for the 104th Aviation Unit of the Pennsylvania Army National Guard ("104th Aviation")[2] on the grounds that the potential environmental consequences of the use of that facility have not been fully explored. Mid–State Airport is bounded on all sides by a Pennsylvania state forest and by Pennsylvania Game Commission lands. Located within the state forest is a state park, the Black Moshannon State Park, which adjoins part of the airport.

This action was filed by several conservation groups[3] who are concerned about the potentially negative impact on the surrounding wilderness areas if the 104th Aviation is permitted to use Mid–State as its base. Plaintiffs contend that the federal agency which granted final approval for the use of Mid–State, the National Guard Bureau of the Army and Air Force (the "National Bureau"), failed to adequately study the potential for adverse environmental consequences in derogation of its responsibilities under the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321 et seq. ("NEPA").[4]

NEPA requires that any federal agency contemplating an action which will have a "significant impact" on the environment prepare an Environmental Impact Statement (EIS), setting forth:

1. the environmental impact of the proposed action;

---

1. Mid–State Airport is a general aviation airport that is owned and operated by the Commonwealth of Pennsylvania and located in Centre County, near the community of Philipsburg.

2. The 104th Aviation was formerly stationed at the Scranton/Wilkes–Barre International Airport.

3. The groups which initiated this action are: Don't Ruin Our Park; the Pennsylvania Federation of Sportsmen's Club, the Pennsylvania Environmental Defense Foundation and the Sierra Club.

4. Plaintiffs have named as defendants in this action officials employed by the various state and federal agencies involved in selecting and approving Mid–State as the base. The defendants named are: Michael P.W. Stone, Secretary of the Army, John B. Conaway, Chief of the National Guard Bureau, William A. Navas, Deputy Director of the Army National Guard, and Gerald T. Sajer, Adjutant General of the Pennsylvania National Guard.

2. any adverse environmental effects which cannot be avoided should the proposal be implemented;

3. alternatives to the proposed action;

4. the relationship between local short term uses of man's environment and the maintenance and enhancement of long-term productivity; and

5. any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

42 U.S.C. § 4332(2)(C). The agency is not required to prepare an EIS if it determines (following preparation of a preliminary study, known as an Environmental Assessment or "EA") that the proposed project will have "no significant impact" on the environment.

Following completion of the Environmental Assessment for the Mid–State relocation (the preparation of which included an opportunity for public commentary on the project), the National Bureau concluded that use of Mid–State by the 104th Aviation would not have a significant impact on the surrounding environment,[5] and that, therefore, preparation of an Environmental Impact Statement was not required under the mandates of NEPA. 42 U.S.C. § 4332(2)(C).

Plaintiffs dispute that determination and seek preliminary and permanent injunctive relief prohibiting use of the Mid–State facility by the 104th Aviation pending completion of further environmental studies.

The court scheduled a one-day hearing on plaintiffs' motion for a preliminary injunction for August 22, 1990. Prior to commencement of that hearing and following a discussion among counsel in chambers, it was decided that plaintiffs' request for a preliminary injunction would be consolidated with the case on the merits, and that testimony introduced at the hearing held that day would be considered for both purposes. Testimony could not be concluded that day, and, therefore, at the end of the day, the hearing was continued to September 19, 1990.

Currently before the court is a motion filed by the defendants on September 11, 1990, in which they request a ruling limiting the court's review of the National Bureau's determination to the administrative record. Due to the need to resolve this issue before court re-convenes the hearing on September 19th, we will issue a ruling at this time. Plaintiffs will, however, be afforded an opportunity to file an opposing brief, upon receipt of which, the court will reconsider its position, and, if appropriate, modify its ruling prior to any subsequent hearing.[6]

## II. DISCUSSION

Defendants' motion raises a single issue: whether this court may consider evidence that was not part of the record before the administrative agency in reviewing the agency's finding that utilization of the Mid–State airport by the 104th Aviation will have no significant impact on the surrounding environment.[7]

*Pennsylvania Protect Our Water and Environmental Resources v. Appalachian Regional Commission*, 574 F.Supp. 1203, 1212 (M.D.Pa.1982) (Rambo, J.), (*"Protect Our Water"*) is directly on point. There, Judge Rambo was confronted with a request by plaintiffs for preliminary and permanent injunctive relief to halt the proposed construction of an access road pending preparation, circulation and public review of a Final Environmental Impact Statement (FEIS). Plaintiffs alleged that the FEIS which had been filed in support of the project was inadequate and failed to conform to NEPA requirements.

---

5. The finding of no significant impact was signed by Brigadier General Navas of the National Bureau on December 11, 1989, setting the stage for implementation of the relocation project. The 104th Aviation began moving its equipment and personnel to the Mid–State facility in January, 1990, and the move was substantially completed by March of this year. Since that time, the 104th Aviation has been conducting full-scale flight operations from Mid–State.

6. Pursuant to Local Rule 401.6, plaintiffs have fifteen days from the date of service of defendants' motion and supporting brief to file their opposing brief. If service was made by mail, plaintiffs have an additional three days to file their responsive brief.

7. Judicial review of administrative decisions is governed by 5 U.S.C. §§ 701 et seq.

One of the issues confronting the court was the admissibility of evidence outside the administrative record. Judge Rambo initially resolved that issue in favor of the plaintiffs and allowed them to introduce testimony during the hearing on the preliminary injunction, and during the case on the merits, which testimony did not appear in the administrative record. *Protect Our Water, supra,* at 1213–14. Following the conclusion of the hearing, but prior to issuance of the court's ruling, the Third Circuit Court of Appeals issued a decision which altered Judge Rambo's decision on the admissibility of additional evidence.

In *Lower Alloways Creek Township v. Public Service Electric,* 687 F.2d 732 (3d Cir.1982), the Third Circuit addressed the plaintiffs' contention that the Nuclear Regulatory Commission had erroneously concluded that the storage of additional quantities of spent fuel at a nuclear reactor site would have no significant environmental impact, and that preparation of an EIS was therefore unnecessary. In rejecting plaintiffs' claim, the Third Circuit discussed at length the plaintiffs' burden of proof in actions challenging the decision of an administrative agency. Although the Third Circuit's opinion did "not precisely address whether plaintiffs challenging the sufficiency of an FEIS in a district court may introduce evidence outside of the administrative record," Judge Rambo concluded that the Third Circuit had "given a strong signal that such evidence is inadmissible." *Protect Our Water, supra* at 1214.

In reaching that determination, Judge Rambo quoted extensively from *Lower Alloways Township,* citing, in particular, those portions of the court's opinion that stressed the necessity for plaintiffs to present their "positions and contentions" fully and forcefully during proceedings before the administrative agency and emphasized the court's reluctance to permit plaintiffs to argue before the reviewing court any matters not fully argued before the agency.

Administrative proceedings should not be a game or a forum to engage in unjustified obstructionism by making a cryptic and obscure reference to matters that 'ought to be' considered and then, after failing to do more than bring the matter to the agency's attention, seeking to have that agency determination vacated on the ground that the agency failed to consider matters 'forcefully presented.'

*Protect Our Water,* supra at 1215, quoting *Lower Alloways Creek,* 687 F.2d at 743 (emphasis added by Judge Rambo).

Citing a United States Supreme Court case, *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,* 435 U.S. 519, 553–54, 98 S.Ct. 1197, 1216–17, 55 L.Ed.2d 460 (1978), the Third Circuit continued:

> *Vermont Yankee* would appear to require—not only of intervenors before a federal agency, but also of petitioners before this Court—that at least some effort be made to advance specific allegations tending to indicate that the agency somehow misapplied the law, misinterpreted the evidence, overlooked certain testimony, or unreasonably reached its 'no significant impact' determination.

*Protect Our Water, supra* at 1215, quoting *Lower Alloways Creek,* 687 F.2d at 747 (emphasis added by Judge Rambo).

Judge Rambo interpreted the *Alloways* court's language as a clear implication that the Third Circuit would not condone the admission of evidence before the district court that was not presented to the agency, stating:

> it appears to this court that the Third Circuit would require those plaintiffs challenging the adequacy of an FEIS to base their challenge upon the evidence placed before the agency during development of the administrative record. The Third Circuit's reliance on the quoted positions of *Vermont Yankee* also suggests to this court that plaintiffs wishing to challenge NEPA-related agency actions must at least bring their concerns to the agency's attention in a forceful manner or point out that their concerns were brought to the agency's attention by others.

In conclusion, this court believes that its focus must be limited to the adminis-

trative record prepared in connection with the FEIS under attack.

We find Judge Rambo's logic persuasive, and fully agree with her analysis of this issue.[8] On that basis, we will issue a ruling limiting plaintiffs' evidence to matters pertaining to the preliminary injunction, specifically, to the likelihood of immediate or irreparable harm if the injunction does not issue, the likelihood that granting the injunction will cause "parties interested in the proceedings" to suffer harm; and the likelihood that public interest will be adversely affected if the injunction is granted. See: *Fink v. Supreme Court of Pennsylvania*, 646 F.Supp. 569, 570, (M.D.Pa. 1986), citing *Pennsylvania v. United States Department of Agriculture*, 469 F.2d 1387, 1388 (3d Cir.1972).

---

**8.** See also: *Dry Color Manufacturers' Association, Inc. v. Department of Labor*, 486 F.2d 98, 104 n. 8 (3d Cir.1973) In considering the admissibility of a report that was not part of the administrative record, the court stated in a footnote:

It has long been settled that in reviewing an agency's action and the adequacy of an agency's articulation of its action, including findings of fact and reasoning processes, courts must look to the record that was considered by the agency and to the factual findings and reasoning of the agency—not to *post hoc* rationalizations of counsel or even agency members and not to evidentiary materials that were not considered by the agency.

Cf. *County of Suffolk v. Secretary of Interior*, 562 F.2d 1368, 1384–85 (2nd Cir.1977), *cert. de-*nied, 434 U.S. 1064, 98 S.Ct. 1238, 55 L.Ed.2d 764 (1978) ("Allegations that an EIS has neglected to mention a serious environmental consequence, failed to adequately to discuss some reasonable alternative, or otherwise swept stubborn problems ... under the rug ... raise issues sufficiently important to permit the introduction of new evidence in the district court, including expert testimony with respect to technical matters, both in challenges to the sufficiency of an environmental impact statement and in suits attacking an agency determination that no such statement is necessary.")

For a list of cases which have resolved this issue, or related issues, differently, see: *Atlantic Terminal Urban Renewal Area Coalition v. New York City Department of Environmental Protection*, 705 F.Supp. 988, 997–98 (S.D.N.Y.1989).